913 P.2d 57

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Thomas EASTMAN, Defendant–Appellant.**

No. 18686.

Supreme Court of Hawai'i.

March 15, 1996.

ed the court's erroneous reference to that date is harmless.

Edwin L. Kamauoha, Jr., Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Mark R. Simonds, Deputy Prosecuting Attorney, County of Maui, on the briefs, Wailuku, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

After a bench trial, defendant-appellant Thomas Eastman (Eastman) was found guilty of abuse of a family or household member in violation of Hawai'i Revised Statutes (HRS) § 709–906(1) (Supp.1994).[1] On appeal, Eastman contends that the State of Hawai'i (prosecution) presented insufficient evidence to convict him of the offense. For the reasons set forth below, we affirm the family court's judgment.

## I. BACKGROUND

Eastman lived together with his wife, Renee Bautista (Bautista), and Bautista's baby at the time of the alleged incident of physical abuse in this case. At Eastman's bench trial, Bautista testified that, prior to the incident, Eastman and Bautista had moved their furniture into their kitchen so that their carpets could be cleaned. By the evening of September 30, 1994, the carpet had been cleaned and Eastman was supposed to move all the furniture out of the kitchen again, but Eastman failed to do so because he was late returning home from work on that particular day. As a result, Bautista became angry at Eastman and told him that she was going to go to a nearby friend's home to wait while he moved the furniture out of the kitchen. Bautista picked up a telephone receiver to call her friend, but Eastman thought Bautista was trying to make a long distance telephone call. Eastman and Bautista had just paid over five hundred dollars for a telephone phone bill, so Eastman became angry and told Bautista she was "not calling long distance, and he yanked the phone out" of the telephone jack. Bautista took the telephone receiver and "conked him over the back of the head with it until [she] saw blood running." Eastman walked out of the house saying that he was going to report Bautista to the police.

Bautista further testified that she feared the police would arrest her and take her away from her baby, so Bautista went with her baby to her friend's nearby home. When Police Officer Thomas Martins (Officer Martins) and Police Officer Walter Whitten[2] (Officer Whitten) arrived at the friend's home to speak with Bautista about Eastman's complaint, they noticed that Bautista had a swollen left eyebrow, and at that time Bautista told the officers that Eastman had slapped her. However, when Bautista testified at Eastman's subsequent trial, she proceeded to recant this prior statement, explaining instead that Eastman had not struck her at all, but rather, Bautista had actually struck her left eyebrow repeatedly with her own hand before the officers arrived in order to deceive the officers into believing that Eastman had slapped her on the side of her head. Bautista further testified that she was able to hit herself in the left eyebrow without experiencing pain because she was intoxicated at that time. Thus, when Officer Martins and Offi-

---

1. HRS § 709–906(1) (Supp.1994) provides in relevant part:

 § 709–906 **Abuse of family and household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member.... For the purposes of this section, "family or household member" means spouses or former spous-es, parents, children, and persons jointly residing or formerly residing in the same dwelling unit.

2. In the prosecution's answering brief at 2, the prosecution noted that the transcript of the trial proceedings incorrectly referred to Police Officer Walter Whitten's last name as "Whitman."

cer Whitten arrived to speak with Bautista about Eastman's complaint, she was able to convince them that they should arrest Eastman for physical abuse.

Bautista also testified at trial that she could not tell whether Eastman had been drinking that night, but Bautista admitted that her left eyebrow was swollen on September 30, 1994, when Officer Martins and Officer Whitten arrived at her friend's house, and she acknowledged that police photographs clearly and accurately depicted her swollen left eyebrow as it appeared on that particular evening. The prosecution eventually introduced these police photographs into evidence.

When the prosecution asked Bautista whether she told the police officers that she had been dialing 911 when Eastman pulled the telephone out of the telephone jack, Bautista answered:

> No, I said no. I remember that. I did say, no. I wasn't dialing the police. I was dialing my girlfriend's house, and I couldn't figure out why they kept asking me that. They kept asking me that, and I kept saying, no, I was calling my girlfriend. That's how I remember.

Although Bautista said that the police officers "kept pressuring" Bautista to make a written statement in a Victim's Voluntary Statement Form (VVSF), Bautista conceded that the police officers did not tell her what to write; Officer Whitten merely told Bautista to "write it out whatever happened." The prosecution showed Bautista a photocopy of the VVSF with Bautista's signature, and Bautista agreed that it clearly and accurately represented her own prior statements and her own signature which she had written in the VVSF. The prosecution eventually introduced the VVSF into evidence.

The first question in the VVSF asked whether Bautista had been "physically hurt, harmed, or abused," and Bautista had answered by writing in the word, "Yes[.]" Bautista had also stated in the VVSF that immediately prior to the alleged abuse she had "Yelled, Ragged [sic], provided, needed a wacking [sic] He [sic] was upset about me moving & took the stroller so I got in his face[.]" Bautista had further stated in the

VVSF that Eastman "slapped me" on the "left side of my head[,]" after which Bautista "grab[bed]· for phone Then [sic] hit him w/Receiver [sic] after he pulled the phone out of socket [sic] [.]"

However, when asked on the stand whether her prior statements in the VVSF were true, Bautista answered, "No, it's not true." Bautista admitted that she had willingly lied to the police officers and had made the false statements in the VVSF because on the night of the alleged abuse she "would say or do anything not to go to jail." In contrast, Bautista now wanted to tell the truth about Eastman because she could not "just sit there and let him go to jail when he never did hit me." She also indicated that she and Eastman had reconciled since their altercation, and when the prosecution asked Bautista whether it would be fair to say that she would do anything to keep Eastman from going to jail, Bautista answered, "That would be fair, too. I have a child." However, Bautista also stated that she "would never lie under oath."

Officer Martins testified that on September 30, 1994, he first met Eastman when Eastman entered the Lahaina Police Station and "wanted me to go arrest his wife who he said had struck him over the head with a telephone[.]" However, Eastman's eyes were "red and watery" and Officer Martins detected "liquor on his breath." Furthermore, Eastman gave more than one version of why his wife had attacked him.

According to Officer Whitten's testimony, when he and Officer Martin eventually spoke with Bautista, she "had a knot on her head, and she was very incoherent and constantly crying." Officer Whitten "tried to calm her down" because "she was very hysterical." Bautista told Officer Whitten that Eastman had become angry because she had wanted to leave him, and in his anger Eastman had slapped Bautista on the side of her head. Bautista told Officer Whitten that after Eastman had hit her, she went to her telephone and "was attempting to call 911" when the altercation escalated further and Bautista struck Eastman in the back of his head with the telephone receiver.

Officer Whitten confirmed that he had given Bautista a VVSF and had told her "[t]hat she didn't have to give me this statement, but it would help in my investigation if she would cooperate[,]" after which Bautista "relented and gave this statement of her own free will." In addition to Bautista, Officer Whitten also attested to the authenticity and accuracy of Bautista's statements in the VVSF, as well as the police photographs of Bautista's swollen left eyebrow.

After closing arguments from counsel, the family court found Eastman guilty of abuse of a family or household member in violation of HRS § 709–906(1), ruling in relevant part as follows:

> Okay, the Court finds that the testimony of Ms. Bautista today was not credible. The document that she signed, the photographs, I think, attest to the fact of what happened, and I'm very clear in my mind that Mr. Eastman did hit her. So the Court is going to find the Defendant guilty as charged.

Eastman filed this timely appeal.

## II. *STANDARD OF REVIEW*

"We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed."

" 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational infer-

ences under the facts in evidence, including circumstantial evidence."

*State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting *State v. Batson,* 73 Haw. 236, 248–49, 831 P.2d 924, 931 (1992), *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992)) (brackets in original); *see also State v. Reed,* 77 Hawai'i 72, 81–82, 881 P.2d 1218, 1227–28 (1994); *In re John Doe, Born on January 5, 1976,* 76 Hawai'i 85, 92–93, 869 P.2d 1304, 1311–12 (1994); *State v. Silva,* 75 Haw. 419, 432, 864 P.2d 583, 589–90 (1993).

## III. *DISCUSSION*

In order to convict Eastman for physical abuse of a family or household member under HRS § 709–906(1), the prosecution must prove: (1) Eastman physically abused a family or household member, HRS § 709–906(1) (Supp.1994); and (2) Eastman did so intentionally, knowingly or recklessly. HRS § 702–204 (1993). Eastman contends that there was insufficient evidence with respect to these two elements to support Eastman's conviction. We disagree and affirm.

### A. Physical Abuse of a Family or Household Member

Eastman concedes that Bautista was a family member on September 30, 1994, but he contends that the evidence was not sufficient to prove that he physically abused Bautista. The prosecution introduced into evidence police pictures as well as the testimony of Bautista and Officer Whitten to prove that Bautista's left eyebrow was swollen on the evening of September 30, 1994. As a percipient witness, Officer Whitten further described Bautista's appearance as "very incoherent," "constantly crying," and "very hysterical" on the night of the alleged abuse. The most damaging evidence for Eastman was the VVSF, in which Bautista had affirmed that Eastman had "physically hurt, harmed, or abused" her, and had stated that Eastman had "slapped me" on the "left side of my head[.]"

Under the Hawai'i Rules of Evidence (HRE) Bautista's out of court statements in the VVSF constitute hearsay because they are "statement[s], other than

[those] made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 801(3) (1993). Hearsay is not admissible at trial unless it qualifies as an exception to the rule against hearsay. *Shea v. City & County*, 67 Haw. 499, 505, 692 P.2d 1158, 1164 (1985); *Kekua v. Kaiser Found.*, 61 Haw. 208, 217, 601 P.2d 364, 370 (1979). However, an exception to the rule against hearsay can be found in HRE Rule 802.1(1), which "provides for substantive use of most prior inconsistent witness statements[.]" Commentary to HRE Rule 613 (1993).

**Rule 802.1 Hearsay exception; prior statements by witnesses.** The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:

(1) Inconsistent statement. The declarant is subject to cross-examination concerning the subject matter of the declarant's statement, the statement is inconsistent with the declarant's testimony, the statement is offered in compliance with rule 613(b), and the statement was:

. . . .

(B) Reduced to writing and signed or otherwise adopted or approved by the declarant; . . .

. . . .

HRE Rule 802.1(1)(B) (1993). "The intent is to include in paragraph (1) all written or recorded statements that can be fairly attributed to the witness declarant." Commentary to HRE Rule 802.1 (1993).

The trustworthiness of statements defined in paragraphs (1)(A), (B), and (C) is further assured by the requirement that the witness-declarant be "subject to cross-examination concerning the subject matter of the statement." The situation envisioned is one where the witness has testified about an event and his prior written statement also describes that event but is inconsistent with his testimony. Since the witness can be cross-examined about the event and the statement, the trier of fact is free to credit his present testimony or his prior statement in determining where the truth lies. Because the witness is subject to cross-examination, the substantive use of his prior inconsistent statements does not infringe the sixth amendment confrontation rights of accused in criminal cases, see *California v. Green*, 399 U.S. 149 [90 S.Ct. 1930, 26 L.Ed.2d 489] (1970).

Commentary to HRE Rule 802.1 (1993).

HRE Rule 802.1 has only been in effect since January 1, 1981, and consequently Hawai'i lacks case authority upholding the substantive use of prior inconsistent witness statements pursuant to HRE Rule 802.1(1). However, in *State v. Lincoln*, 3 Haw.App. 107, 119, 643 P.2d 807, 816 (1982), *superseded by statute on other grounds, Briones v. State*, 74 Haw. 442, 456 n. 7, 848 P.2d 966, 974 n. 7 (1993), the Intermediate Court of Appeals (ICA) indicated that after the effective date of HRE Rule 802.1 the substantive use of prior inconsistent witness statements might be allowed. In *Lincoln*, the ICA rejected a defendant's contention that the trial court had erred in refusing the following proposed jury instruction:

Evidence that on some former occasion, a witness made a statement or statements that were inconsistent with his testimony in this trial, may be considered by you not only for the purpose of testing the credibility of the witness, but also as evidence of the truth of the facts as stated by the witness on such former occasion.

*Lincoln*, 3 Haw.App. at 119, 643 P.2d at 816. However, the ICA noted:

If this case had been tried after January 1, 1981, then perhaps [the defendant]'s contention would have merit. Rule 802.1(1), Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (1976, as amended). Since this case was tried prior to January 1, 1981, there is no error in the court's instruction. [Citations omitted].

*Id.*

Hawai'i is not the only jurisdiction which allows the substantive use of prior inconsistent witness statements that have been reduced to writing and have been signed, adopted or approved by the declarant. *See, e.g., Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811, 818 (1994); *Nance v. State*, 331 Md.

549, 629 A.2d 633, 643 (1993); *State v. Mancine*, 124 N.J. 232, 590 A.2d 1107, 1115 (1991); *People v. Hood*, 223 Ill.App.3d 157, 164 Ill.Dec. 851, 854–55, 583 N.E.2d 1173, 1176–77 (1991), *appeal denied*, 144 Ill.2d 638, 169 Ill.Dec. 147, 591 N.E.2d 27 (1992); *State v. Whelan*, 200 Conn. 743, 513 A.2d 86, 92 (1986), *cert. denied*, 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 598 (1986). For example, where a husband was convicted of murdering a visiting child and attempting to murder his wife (Ms. Poe) with a shotgun, the Court of Special Appeals of Maryland followed established case precedent and held that it was proper for the prosecution to offer Ms. Poe's prior inconsistent statements as substantive evidence of her husband's guilt. *Poe v. State*, 103 Md.App. 136, 652 A.2d 1164, 1173 (1995), *cert. granted*, 339 Md. 232, 661 A.2d 733 (1995), *affirmed*, 341 Md. 523, 671 A.2d 501 (1996). On the day of the murder, Ms. Poe recounted to a state trooper (Trooper Gawrych) that her husband had threatened to kill her and her boyfriend, and before her husband began firing his shotgun, Ms. Poe had heard her husband say, "Take this," or "Eat this, bitch," which Trooper Gawrych reduced to writing. *Poe*, 652 A.2d at 1173. At the subsequent trial Ms. Poe acknowledged that she had made the prior statement to Trooper Gawrych, but Ms. Poe proceeded to testify that her prior statement to Trooper Gawrych had been based on false information provided by her visiting sister and her visiting sister's boyfriend, who, according to Ms. Poe, had lied to her. *Id.*, 652 A.2d at 1173–74. Accordingly, the *Poe* court held that Ms. Poe's prior inconsistent statement to Trooper Gawrych met all the requirements for admissibility as substantive evidence of the husband's guilt:

> [I]t was based on the declarant's own knowledge of the facts; it was reduced to writing by Trooper Gawrych; it was adopted by Ms. Poe when she admitted at trial to making the statement; and Ms. Poe was subject to cross-examination at the trial where the prior inconsistent statement was introduced. Consequently, we hold that the circuit court did not err in instructing the jury that it could consider Ms. Poe's prior inconsistent statement to Trooper Gawrych as substantive evidence of [her husband]'s guilt.

*Id.* at 1174.

■ Likewise, Bautista's prior inconsistent statements in the VVSF met all the requirements under HRE Rule 802.1(1)(B) for admissibility as substantive evidence of Eastman's guilt. HRE Rule 802.1(1)(B) requires the following: (1) a witness must testify about the subject matter of his or her prior statements so that the witness is subject to cross-examination concerning the subject matter of those prior statements; (2) the witness's prior statements must be inconsistent with his or her testimony; (3) the prior inconsistent statements must be reduced to writing and signed or otherwise adopted or approved by the witness; (4) the prior inconsistent statements must be offered in compliance with HRE Rule 613(b) (1993), which requires that, on direct or cross-examination, the circumstances of the prior inconsistent statements have been brought to the attention of the witness, and the witness has been asked whether he or she made the prior inconsistent statements.[3]

(1) At Eastman's trial the prosecution directly examined Bautista as a witness and elicited testimony from her about her argument with Eastman on September 30, 1994, the events that caused her to suffer a swollen left eyebrow, and her prior statements in the VVSF alleging that Eastman had slapped her. Thus, the prosecution made Bautista subject to opposing counsel's cross-examination concerning the subject matter of Bautista's prior statements in the VVSF.

(2) While Bautista testified that her swollen left eyebrow was a self-inflicted wound, Bautista alleged through her prior statements in the VVSF that Eastman had

---

3. A proponent may impeach his or her own witness without the court's first having to rule that the witness is hostile, because "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." HRE Rule 607 (1993). "This rule, which is identical with Fed.R.Evid. 607, rejects the traditional theory that a party calling a witness 'vouches' for his truthfulness and therefore is barred from impeaching him." Commentary to HRE Rule 607 (1993).

slapped her on the left side of her head. Thus, Bautista's prior statements in the VVSF were inconsistent with her testimony.

(3) The record shows that Bautista reduced her prior inconsistent statements to writing in the VVSF, which she signed. At trial Bautista acknowledged that the handwriting and signature in the VVSF were hers.

(4) During the prosecution's direct examination[4] of Bautista, the prosecution brought the circumstances of Bautista's prior inconsistent statements in the VVSF to her attention by asking her why her left eyebrow was swollen on September 30, 1994, the night when she and Eastman had argued. After Bautista responded by testifying that her swollen left eyebrow was merely a self-inflicted wound, the prosecution asked Bautista whether she had made the prior inconsistent statements in the VVSF that inculpated Eastman, and Bautista answered in the affirmative.[5] Thus, the prosecution satisfactorily

4. The legislative history of HRE Rule 613(b) shows that the Hawai'i legislature intended to allow a proponent to lay the foundation for extrinsic evidence of a witness's prior inconsistent statement pursuant to HRE Rule 802.1 during direct examination or cross-examination of the witness:

> Rule 613(b), relating to the admissibility of extrinsic evidence of a prior inconsistent statement by a witness (p. 48, lines 15–22 of S.D. 1), *has been amended to remedy a serious problem* raised in its testimony by the Department of the Prosecuting Attorney, City and County of Honolulu.
>
> The problem relates to the impeachment of a "turncoat" witness by the proponent of that witness. The proponent is allowed to impeach his own witness under Rule 607, and if the impeachment is by prior, written inconsistent statement then *Rule 802.1(1) provides for substantive use of the statement provided the conditions in Rule 802.1 are met and "the statement is offered in compliance with Rule 613(b)."*
>
> The problem is that *the intent of Rule 802.1 is frustrated,* in the case of the proponent's own turncoat witness, *by two provisions of Rule 613(b):*
>
> (a) *613(b) requires that the foundation be laid on cross-examination,* but in this case the impeachment is happening on direct; and
>
> (b) 613(b)(3) requires that "the witness has not distinctly admitted that he made the statement," yet the turncoat witness typically admits making the statement but then goes on to deny the truth of it.
>
> Rule 613(b)(3) comes from our present law, and the rationale is that since the prior statement is hearsay and not admissible to prove its contents, there is simply no need for the extrinsic evidence once the witness admits the contradiction. But, since Rule 802.1 excepts written, inconsistent statements from the hearsay ban, there is a legitimate need for the extrinsic evidence even when the witness admits making the statement. After all, the statement is usable [sic] to prove the truth, and the trier of fact can in effect "pick" between the witness' testimony and his prior statement.
>
> *To remedy these defects, Rule 613(b) has been amended to read in pertinent part as follows:*
>
> "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless, on *direct or cross-examination,* (1) the circumstances of the statement have been brought to the attention of the witness, and (2) the witness has been afforded an opportunity to explain or to deny the statement."

Stand.Comm.Rep. No. 712–80, in 1980 House Journal, at 1610 (emphasis added). The Hawai'i legislature eventually modified the bill enacting the current version of HRE Rule 613(b) to require only that the witness be asked whether he or she made the statement after the circumstances of the statement have been brought to the witness's attention. House Conf.Comm.Rep. No. 81–80, in 1980 House Journal, at 1132.

5. During the prosecution's direct examination of Bautista, the prosecution asked Bautista the following questions about her prior inconsistent statements in the VVSF:

> Q. Is that the document you filled out on September 30, 1994?
> A. I'm sure it must be. Well, here it says, boyfriend, and he's my husband. I don't know. Yeah, I guess that's what I would write when I'm angry and drunk.
> Q. Do you recognize the handwriting?
> A. Yeah, this is like my "r" and my "b" and my "s." That's me. I signed it.
> Q. Do you recognize the rest of the handwriting in the answers to the questions?
> A. Well, yeah.
> Q. Is that your handwriting?
> A. Yes, it is my handwriting.
> Q. Does this photocopy document clearly and accurately represent the original document that you filled out?
> A. Yes.
> Q. Do you recall the answer you wrote to question number two, describe how you were physically hurt, harmed, or abused? Do you recall the answer you wrote to that question?
> A. Not at all. No, I don't.
> Q. Is that your handwriting on the line beneath question number two, which says "slapped me"?
> A. Um-hmm.
> Q. Is that the answer you wrote on September 30, 1994?
> A. Yes.
> Q. Is that your handwriting that wrote above that, were you physically hurt, harmed,

offered Bautista's prior inconsistent statements in the VVSF in compliance with HRE Rule 613(b). *State v. Pokini*, 57 Haw. 26, 29, 548 P.2d 1402, 1405 (1976) ("The foundation requirement is for the purpose of rekindling the witness' memory, and substantial compliance is all that is necessary"), *cert. denied*, 429 U.S. 963, 97 S.Ct. 392, 50 L.Ed.2d 332 (1976).

Under cross-examination by Eastman's counsel, Bautista explained that, although she had made the prior inconsistent statements in the VVSF inculpating Eastman, the prior inconsistent statements in the VVSF were not true because she had actually hit herself on her eyebrow after her argument with Eastman in order to deceive the police officers into believing that Eastman had slapped her. The cross-examination of Bautista satisfied constitutional and trustworthiness concerns over admitting Bautista's prior inconsistent statements in the VVSF into evidence, because the cross-examination gave Eastman the opportunity to have Bautista fully explain to the trier of fact why her in-court and out-of-court statements were inconsistent, which, in turn, enabled the trier of fact to determine where the truth lay.

Although Bautista recanted her statements in the VVSF by testifying that Eastman had not slapped her, the trial court found "that the testimony of Ms. Bautista today was not credible." It was within the trial court's prerogative to believe Bautista's prior inconsistent statements in the VVSF and to disbelieve Bautista's oral testimony in court. It is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part. *Lono v. State*, 63 Haw. 470, 473, 629 P.2d 630, 633 (1981). As the trier of fact, the judge may draw all reasonable and legitimate inferences and deductions from the evidence, and the findings of the trial court will not be disturbed unless clearly erroneous. *Id.* at 473–74, 629 P.2d at 633.

An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge. *Domingo v. State*, 76 Hawai'i 237, 242, 873 P.2d 775, 780 (1994); *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 117, 839 P.2d 10, 28 (1992), *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992); *State v. Aplaca*, 74 Haw. 54, 65–66, 837 P.2d 1298, 1304–05 (1992).

Although Bautista, as the alleged victim of physical abuse, was not willing to incriminate Eastman while she was on the witness stand at trial, it is not necessary for a victim of physical abuse to testify against his or her alleged perpetrator in order for the trial court to establish through other evidence that physical abuse has taken place. *Cf. State v. Hopkins*, 60 Haw. 540, 542–45, 592 P.2d 810, 811–813 (1979) (affirming a harassment conviction although the sole prosecution witness was the arresting officer, and the alleged victims of harassment did not testify against the alleged perpetrators). According to the record, substantial evidence supports the trial court's finding that Eastman physically abused his wife, Bautista.

### B. Requisite State of Mind

Eastman contends that the prosecution did not offer sufficient evidence to prove that he physically abused Bautista with the requisite state of mind, i.e., intentionally, knowingly or recklessly. Eastman was charged with abusing a family or household member in violation of HRS § 709–906(1) (Supp.1994), which does not describe a culpable state of mind attendant to the prohibited acts. In such a case, the Hawai'i Penal Code (HPC) provides that "[w]hen the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." HRS § 702–204 (1993). According-

or abused? Is that your handwriting that writes "yes"?
A. Um-hmm.
Q. And then when it says, by whom, is that your handwriting that writes, "Thomas Eastman"?

A. Yes.
The prosecution also asked similar questions about the VVSF during its subsequent redirect examination of Bautista.

ly, the requisite state of mind for a violation of HRS § 709–906(1) is that of acting intentionally, knowingly, or recklessly.

■ At first glance, the lack of any specified state of mind in HRS § 709–906(1) might mislead one to conclude that the offense was intended to be a strict or an absolute liability crime. However, HRS § 702–212(2) permits a penal statute to dispense with the state of mind requirement only "insofar as a legislative purpose to impose absolute liability for such offense or with respect to any element *plainly appears.*" HRS § 702–212(2) (1993) (emphasis added). Absent statutory language expressly imposing absolute liability, the states of mind denominated in HRS § 702–204 will generally apply, because we will not lightly discern a legislative purpose to impose absolute liability. *State v. Rushing,* 62 Haw. 102, 105, 612 P.2d 103, 106 (1980). In addition, "absolute or strict liability in the penal law is indefensible in principle if conviction results in the possibility of imprisonment and condemnation." Commentary to HRS § 702–212(2) (1993). Conviction for abusing a family or household member in violation of HRS § 709–906(1) results in the possibility of imprisonment,[6] and thus, from the wording of HRS § 709–906 as a whole, we do not find that a legislative purpose to impose absolute liability "plainly appears."

Nor is a negligent state of mind applicable under the express terms of HRS § 702–204. "Negligence with respect to the element of an offense will not establish that element unless specifically so provided." Commentary to HRS § 702–204 (1993). Therefore, the prosecution must prove that a defendant acted intentionally, knowingly, or recklessly before he or she may be convicted of the offense proscribed in HRS § 709–906(1).

The three alternative states of mind referred to as "intentionally, knowingly or recklessly" are in descending order of culpa-bility, and proof of any one of them would satisfy the state of mind requirement for HRS § 709–906(1). *Cf.* Commentary to HRS § 702–208 (1993). Thus, the prosecution needs only to prove the lowest of the three alternative levels of culpability, i.e., recklessness, in order to satisfy the state of mind requirement for HRS § 709–906(1). HRS § 702–206(3) defines "recklessly" as follows:

(a) A person acts recklessly with respect to his [or her] conduct when he [or she] consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.

(b) A person acts recklessly with respect to attendant circumstances when he [or she] consciously disregards a substantial and unjustifiable risk that such circumstances exist.

(c) A person acts recklessly with respect to a result of his [or her] conduct when he [or she] consciously disregards a substantial and unjustifiable risk that his [or her] conduct will cause such a result.

(d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him [or her], the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

HRS § 702–206(3) (1993). Furthermore, "[w]hen the law provides that recklessness is sufficient to establish an element of an offense, that element also is established if, with respect thereto, a person acts intentionally or knowingly." HRS § 702–208 (1993).

■ Although the prosecution did not introduce direct evidence showing Eastman's state of mind at the time when he physically abused Bautista, it is not necessary for the

**6.** HRS § 709–906(5) (Supp.1994) provides in pertinent part as follows:

Abuse of a family or household member, and refusal to comply with the lawful order of a police officer under subsection (4) are misdemeanors and the person shall be sentenced as follows:

(a) For the first offense the person shall serve a minimum jail sentence of forty-eight hours; and
(b) For a second offense and any other subsequent offense which occurs within one year of the previous offense the person shall be termed a "repeat offender" and serve a minimum jail sentence of thirty days.

prosecution to introduce direct evidence of a defendant's state of mind in order to prove that the defendant acted intentionally, knowingly or recklessly. *State v. Rushing,* 62 Haw. at 106, 612 P.2d at 106–07 (affirming a conviction for welfare fraud although the prosecution had offered no direct evidence of the defendant's state of mind). Given the difficulty of proving the requisite state of mind by direct evidence in criminal cases, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient. *State v. Batson,* 73 Haw. at 254, 831 P.2d at 934 (holding that substantial circumstantial evidence supported a trial court's conclusion that a defendant had knowingly caused his son's death). The mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances. *Id.*

Moreover, we have held that persons of ordinary intelligence would have a reasonable opportunity to know that causing physical injury by punching someone in the face would constitute physical abuse. *State v. Kameenui,* 69 Haw. 620, 623, 753 P.2d 1250, 1252 (1988). Absent a legal justification or excuse, a slap on the side of the head involves, at a minimum, a substantial and unjustifiable risk, i.e., "a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation." HRS § 702–206(3)(d) (1993).

 The same substantial evidence showing that Eastman slapped Bautista on the side of her head also supports a finding that, at a minimum, Eastman consciously disregarded a substantial and unjustifiable risk of physically abusing Bautista. Therefore, the prosecution provided substantial evidence

from which the trial court could infer that Eastman physically abused Bautista with the minimum requisite state of mind, *i.e.,* recklessness, for a conviction under HRS § 709–906(1).

## IV. CONCLUSION

We have held that the testimony of merely one percipient witness constituted substantial evidence to support a conviction for physical abuse of a family or household member under HRS § 709–906(1). *State v. Ibuos,* 75 Haw. 118, 123, 857 P.2d 576, 578–79 (1993) (vacating and remanding a defendant's conviction on other grounds). In the case at bar, substantial evidence in the form of police photographs, Bautista's written statements in the VVSF, and testimony from Bautista, Officer Martins and Officer Whitten support the family court's finding that Eastman slapped his wife on the side of her head, and show that Eastman committed this physical abuse with, at the very least, a reckless state of mind. Accordingly, the family court committed no error in convicting Eastman of physical abuse of a family or household member. *Pone,* 78 Hawai'i at 265, 892 P.2d at 458; *Reed,* 77 Hawai'i at 81–82, 881 P.2d at 1227–28; *In re John Doe, Born on January 5, 1976,* 76 Hawai'i at 92–93, 869 P.2d at 1311–12; *State v. Silva,* 75 Haw. at 432, 864 P.2d at 589–90; *Batson,* 73 Haw. at 248–49, 831 P.2d at 931.