**Electronically Filed
Supreme Court
SCWC-13-0000087
24-SEP-2014
09:33 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

JAMES E. ABEL,
Petitioner/Defendant-Appellant.

SCWC-13-0000087

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000087; CASE NO. 1P1120008541)

September 24, 2014

RECKTENWALD, C.J., NAKAYAMA, MCKENNA, POLLACK AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

James Abel seeks review of his conviction for the offense of Solicitation With Animals in Waikiki Special District. We conclude that an element of this offense is the use of a live animal to request or demand money or gifts. As

insufficient evidence was adduced at trial to prove this element

of the offense, we reverse the Intermediate Court of Appeals'

(ICA) Judgment on Appeal and the District Court of the First

Circuit's (district court) judgment of conviction.

## I.  Background

On August 8, 2012, James Abel (Abel) was charged via

complaint in district court with Solicitation With Animals in

Waikiki Special District, "in violation of Section 29-13.2(b) of

the Hawaii Revised Statutes."[1]  The complaint stated in relevant

part as follows:

---

[1]     Although the State charged Abel with violating the Hawai'i Revised
Statutes (HRS), the number of the provision indicates that the prosecutor
intended to charge Abel under the Revised Ordinances of Honolulu (ROH) § 29-
13.2 (1999), which reads:

> Sec. 29-13.2 Prohibition.
> In the Waikiki special district, no person shall use any
> live animal in furtherance of any solicitation on any
> public property, except in compliance with all of the
> following conditions of this section or, if applicable,
> Section 29-13.2A:
> (a)    The animal shall be held or carried by the person
>        conducting the solicitation at all times. No animal
>        too large to be held or carried shall be used in any
>        solicitation. This subsection shall not apply to a
>        service animal as defined in 49 CFR Section 37.3 when
>        such service animal is being used by an individual
>        with a disability requiring such service animal.
> (b)    The person conducting the solicitation shall not
>        place the animal on or otherwise transfer the animal
>        to any other person.
> (c)    The person shall not place any cage, table, stand, or
>        other object on public property.
> (d)    The person shall not use any city-owned or maintained
>        street furniture or structure, including any bench,
>        planter, utility cabinet, or other street furniture
>        or structure permanently installed on public
>        property, for the display of anything whatsoever in
>        connection with the solicitation, or otherwise put
>        such bench, planter, utility cabinet, street
>                                                (continued. . .)

2

On or about the 31st day of July, 2012, in the City and County of Honolulu, State of Hawaii, JAMES E. ABEL did intentionally, knowingly, or recklessly use any live animal in furtherance of any solicitation on any public property in the Waikiki Special District . . . and did intentionally, knowingly or recklessly place said animal on or otherwise transfer said animal to any other person, thereby committing the offense of Solication [sic] With Animals in Waikiki Special District, in violation of Section 29-13.2(b) of the Hawaii Revised Statutes. Pursuant to Section 29-13.1 of the Revised Ordinances of Honolulu, 'public property' includes any . . . sidewalk . . . under the jurisdiction of any governmental entity or otherwise open to the public.  Pursuant to Section 29-13.1[2]

---

(continued. . .)
    (e)    furniture or structure to use in furtherance of such solicitation.

    (f)    The person conducting the solicitation shall wear at all times on that person's chest so that it is clearly visible to persons being solicited a sign of at least 8 1/2 x 11 inches in size, upon which the following words are legibly printed in letters or characters at least 2 inch in height in both English and Japanese:

    (1)    Solicitor: (Name and address of the person or organization conducting the solicitation).

    (2)    Purpose: (The reason the solicitation is being made.)

    (3)    YOU NEED NOT PAY OR CONTRIBUTE ANY MONEY TO THIS PERSON, ANY PAYMENT OR CONTRIBUTION IS COMPLETELY VOLUNTARY.

    (4)    The Japanese translation for the disclaimer set forth in (3).

The statements required in (3) and (4) shall be in capital letters and bold type.

ROH § 29-13.2 (1999) (emphasis added), available at http://www.honolulu.gov/rep/site/ocs/roh/ROH_Chapter_29__.pdf.pdf.

[2]    ROH § 29-13.1 (1999) states:

For the purposes of this article:
"Public property" includes any street, highway, boulevard, road, sidewalk, alley, island, lane, bridge, parking lot, park, square, space, grounds, mall, building, or other property owned by or under the jurisdiction of any governmental entity or otherwise open to the public.
"Solicitation" means to request or demand money or gifts.
"Waikiki special district" means the Waikiki special district as defined in Section 21-9.80-2.

ROH 29-13.1 (1999), available at http://www.honolulu.gov/rep/site/ocs/roh/ROH_Chapter_29__.pdf.pdf.

> of the Revised Ordinances of Honolulu, "solicitation" means to request or demand money or gifts.

(First and last emphasis added; footnote added).[3]

At Abel's December 17, 2012 bench trial,[4] the State called a single witness, Honolulu Police Department (HPD) Sergeant Stacey Christensen (Sgt. Christensen), who testified concerning the events resulting in the charge against Abel. Sgt. Christensen indicated that she had been a Honolulu police officer for 25 years and, on July 31, 2012, she had been assigned to the Waikiki district "enforcing parking violations." At the time of the incident, "there were a lot of cars going through Kalakaua" and there were people in the area. Sgt. Christensen was standing on the sidewalk, near the street, when her attention was drawn to Abel who was about 15 feet away. She observed Abel "with birds fronting the Outrigger standing on the sidewalk."

> [Prosecutor]: Uh, what did defendant do at that point?
>
> [Sgt. Christensen]: He was placing birds on different individuals taking pictures with the individuals [sic] cameras and I would see money transfer between the individual and Mr. Abel.
>
> [Prosecutor]: Uh, if we can just briefly talk about transferring, um, the birds. Could you -- could you describe as specifically as possible how he transferred?

---

[3] The oral charge read at Abel's trial on December 12, 2012, contained nearly identical language, including the improper reference to the HRS with the numerical citation matching ROH § 29-13.2.

[4] The Honorable Linda K.C. Luke presided.

[Sgt. Christensen]: So he would have the birds in his hands. He would place them on the individuals, take the individuals' camera or phone –

[Prosecutor]: Um-hmm.

[Sgt. Christensen]: -- take a photo, take the pho -- uh, the birds back, and they would give him money.

[Prosecutor]: Okay. So defendant reached out to, uh, other people –

[Sgt. Christensen]: Yes, sir.

[Prosecutor]: -- with the birds?  Okay.

Sgt. Christensen testified that she was not able to hear anything that was said between Abel and any of the persons who gave him money or discern how much money was given to Abel.

After Sgt. Christensen's testimony, Abel made a motion for judgment of acquittal.  Abel argued that, viewed in the light most favorable to the prosecution, Sgt. Christensen's testimony did not prove that solicitation occurred.  The State argued that even though Sgt. Christensen did not hear any of the conversations, she saw Abel placing animals on individuals, he was taking their photos with the birds on them, and he was receiving money as a result.  These observations, argued the State, were sufficient to prove its case beyond a reasonable doubt.  Abel responded that the circumstantial evidence was insufficient because it was not "established that he requested money or demanded money or gifts in exchange," there was "no tip jar that was referred to, no sign requesting any payment," and

thus no solicitation had been proved.  The district court denied the motion.

Abel did not testify, and the defense rested without presenting any evidence.  In closing argument, the State acknowledged that it was not able "to subpoena witnesses to address specifically the solicitation aspect," but maintained that Abel "was placing [birds] on individuals, taking pictures with them of the birds, and that he was receiving money as a result after these two actions took place."  Thus, the State concluded that there was circumstantial evidence sufficient for a conviction.

The defense countered that a significant doubt remained as to whether solicitation, i.e., a demand for gifts or money occurred.  "There's been no clear evidence from any witness who may have allegedly been solicited that [Abel] did indeed request or demand money or gifts."  "Merely extending the gesture by placing birds on someone and taking a photo is just an extension of his aloha spirit.  It's not meant to . . . be a solicitation."

The court orally found Abel guilty of the charge based on "an exchange of cash immediately following the activity of picture taking" within the Waikiki Special District.  The court's oral ruling was follows:

> Based on the court [sic] and following the hearing and after full consideration of the evidence, the court will find beyond a reasonable doubt that Mr. Abel is in violation of Revised Ordinances as noted 29-13.2B based on the credible evidence of Sergeant Christensen. The aloha spirit is one thing, but in terms of the evidence adduced, <u>there was an exchange of cash immediately following the activity of picture taking</u>. This occurred within the prohibited Waikiki district, and I believe the court -- the State has proven its case beyond a reasonable doubt albeit circumstantially.

(Emphasis added).  The court did not make a finding that a solicitation had occurred or that a request or demand for money or gifts had occurred.

On January 14, 2013, the district court issued written findings of fact and conclusions of law that also made no finding of solicitation or that there had been a request or demand by Abel for money or gifts.  The relevant findings of fact stated as follows:

> 1. The Defendant is charged with Solicitation with Animals in Waikiki Special District under [ROH] § 29-13.2(b)[.]
>
> . . . .
>
> 3. On July 31, 2012, Officer Stacey Christensen was on duty enforcing parking violations in Waikiki on Kalakaua Avenue.
>
> 4. <u>Officer Christensen observed Defendant placing birds on an individual while on Kalakaua Avenue. Defendant then took pictures of the individual with the birds. The individual then handed Defendant an unknown amount of money</u>.
>
> 6. Officer Christensen made these observations from approximately fifteen feet away. However, she was unable to hear what Defendant and the unknown individual were saying.

(Emphasis added).[5]  The district court's relevant conclusions of law stated as follows:

---

[5]     The district court did not include a finding of fact #5.

7

2. The court finds and concludes that on or about the 31st day of July, 2012, when Defendant, while in the Waikiki Special District in the City and County of Honolulu, State of Hawai'i, placed birds on another individual, took pictures of said individual with the birds, then accepted an unknown amount of money, Defendant intentionally, knowingly or recklessly solicited with animals in the Waikiki Special District.

3. The court, therefore, finds that the State has proven beyond a reasonable doubt that on or about the 31st day of July, 2012, in the Waikiki Special District in the City and County of Honolulu, State of Hawai'i, Defendant did intentionally, knowingly or recklessly use a live animal in furtherance of any solicitation on public property in the Waikiki Special District and intentionally, knowingly or recklessly placed or otherwise transferred said animal to another person, thereby committing the offense of Solicitation With Animals In Waikiki Special District, in violation of [ROH §] 29-13.2(b)[.]

(Emphases added). Accordingly, the district court concluded Abel had "intentionally, knowingly or recklessly solicited with animals" and therefore committed the charged offense. Abel was sentenced to pay a $300 fine plus a $30 crime victim fee,[6] and the judgment of conviction was issued by the district court.

## II. Appellate Proceedings

On February 12, 2013, Abel filed a Notice of Appeal. In his Opening Brief (OB), Abel contended that the district court wrongly denied his motion for judgment of acquittal and wrongly adjudged him guilty as charged because the State failed to provide sufficient evidence regarding the element of solicitation.

---

[6] At a January 15, 2013 hearing, the court stated that Abel was subject to a $55 crime victim compensation fee, however the judgment of conviction states that the fee was $30.

Abel challenged the district court's conclusions of law ¶¶ 2 & 3. Abel contended that the "use of animals during solicitations in the Waikiki Special District is authorized with the exception of specific prohibitions." Abel argued that ROH § 29-13.2 contains four essential elements: (1) a request or demand for money or gifts; (2) the use of live animals in furtherance of this solicitation; (3) a transferring of the animal onto another person; and (4) the solicitation occurred on public property in the Waikiki Special District. Abel maintained that the State failed to present substantial evidence "that [he] actually requested or demanded money or gifts to take pictures with his birds."

Citing to State v. Xiao, 123 Hawai'i 251, 258, 231 P.3d 968, 975 (2010), Abel compared ROH § 29-13.2(b) to the offense of prostitution under HRS § 712-1200 in that to affirm a conviction under either law, evidence of an offer to engage in specific conduct in return for a fee was required. Abel maintained that because the dispositive issue was whether he transferred his animals to an individual for a fee and there was no evidence of such an exchange, Abel's conduct failed to meet the minimum threshold for a conviction. Thus, Abel concluded that the entry of the conviction based on the evidentiary record violated Abel's due process right not to be convicted except on

proof beyond a reasonable doubt of every element of the offense charged.

In its Answering Brief (AB), the State contended that "it does not need to prove that an 'actual' request or demand for money or gifts took place between Abel and the people he took photographs of with his birds" because ROH § 29-13.2(b) and HRS § 702-204 (1993)[7] required "only that the State prove that Abel intentionally, knowingly, or recklessly used any live animal *in furtherance* of any solicitation within the restricted area." (Brackets omitted).

The State maintained "the criminal offense in this case was completed when Abel used his birds within the restricted area and with the requisite mens rea – intentionally, knowingly, or recklessly using any live animal *in furtherance* of any solicitation." Hence, the pertinent issue was "Abel's state of mind when he used his birds; or, in other words, determining Abel's motivation for using his birds in the manner he did in this case."

---

[7]     HRS § 702-204 (1993) states:

> Except as provided in section 702-212, a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense. When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.

Consequently, the State argued that it did "not need to prove that a 'solicitation' actually took place, as defined in ROH § 29-13.1."  Instead, the offense requires proof "only that Abel intentionally, knowingly, or recklessly used his birds '*in furtherance* of any solicitation' within the restricted area."  Because "in furtherance" was not statutorily defined, the State defined it by its plain meaning:  "furtherance" means "promotion," which in turn means to "encourage to exist."  The State contended that with regard to mens rea, "the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances."  Thus, a defendant could be found guilty of solicitation even if the "urging" was not actually communicated, "as long as it was designed to be communicated."

Based on this interpretation of the statute, the State concluded that "by reaching out to people with his birds, placing his birds onto other people, taking a photograph of the person with his birds in Waikiki, taking his birds back, and thereafter accepting money from that person, Abel clearly intentionally, knowingly, or recklessly used his birds *in promotion of* a request for money or gifts."

On January 8, 2014, the ICA issued its Summary Disposition Order (SDO).  After recounting the evidence at trial, the ICA's analysis was as follows:

11

> Sergeant Christensen's testimony constituted sufficient evidence proving that Abel intentionally, knowingly, or recklessly used his birds in furtherance of solicitation by reaching out to people with his birds, placing his birds onto other people, taking a photograph of the person with his birds in Waikiki, taking his birds back, and accepting money from that person.  There is substantial evidence that Abel intentionally, knowingly, or recklessly used his birds in furtherance of a request for money.

The ICA therefore affirmed the conviction.

### III.  Application for Writ of Certiorari

On April 6, 2014, Abel filed his Application for Writ of Certiorari (Application) and presented the following question:

> 1.    Whether the ICA gravely erred in [not] holding that the district court wrongly denied Abel's motion for judgment of acquittal and wrongly adjudged him guilty as charged because the State failed to provide sufficient evidence regarding the element of solicitation.

Abel again sets forth the four essential elements of ROH § 29-13.2(b) that are required to establish the offense. Abel maintains that the State "failed to present substantial evidence . . . that Abel actually requested or demanded money or gifts to take pictures with his birds."

Abel argues that Sgt. Christensen admitted to not being able to hear if any request for money was made, did not testify as to any hand or head gestures Abel may have made indicating a request for money, and did not testify that Abel had a sign or tip jar suggesting Abel was requesting money in exchange for taking pictures with his birds.

12

Abel reiterates the comparison between the offenses of prostitution and Solicitation with Animals in Waikiki Special District on the grounds that both require proof that the defendant engaged in specific conduct for a fee. Abel admits that he did engage in the conduct of transferring his bird to another person and that this person gave him money. "However, like Xiao, there was no evidence that Abel transferred his birds in exchange for a fee." Thus, "Abel's conduct did not meet the minimum threshold that was required" for a conviction. Abel concludes that his conviction violated his due process right not to be convicted except upon proof beyond a reasonable doubt as to every element of a crime and requests that the ICA's Judgment of Conviction and the district court's judgment of conviction be reversed.

On April 21, 2014, the State filed its Response. The State reasserts its arguments from its Answering Brief that "the State does not need to prove that a 'solicitation' actually took place, as defined by ROH § 29-13.1." The State compares ROH § 29-13.2 to criminal solicitation under HRS § 705-510(2) (1993),[8]

---

[8] HRS § 705-510 (1993) states:

(1) A person is guilty of criminal solicitation if, with the intent to promote or facilitate the commission of a crime, the person commands, encourages, or requests another person to engage in conduct or cause the result specified by the definition of an offense or to engage in conduct which would be sufficient to establish complicity in the specified conduct or result.

(continued. . .)

13

"inasmuch as the offense of criminal solicitation similarly does not require a communication between the defendant and the person solicited." Thus, the State maintains that Abel can be convicted based on evidence showing that Abel clearly used his birds *in promotion of* a request for money or gifts.

In addition, the State maintains that ROH § 29-13.2(b) "presupposes that a person did in fact 'use any live animal in furtherance of any solicitation' within 'public property' of the 'Waikiki special district.'" "In other words, ROH § 29-13.2(b) describes one of the 'conditions' that must be followed if a person does in fact 'use any live animal in furtherance of any solicitation[.]'" The State continues that, even if subsection (b) is an additional element, the element added is not a "solicitation" that is "separate and distinct from the words 'in furtherance of any solicitation,'" but rather it is satisfied by "plac[ing] the animal on or otherwise transfer[ing] the animal to any other person[.]"

## IV. Discussion

### A.

"The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

---

(continued. . .)
> (2) It is immaterial under subsection (1) that the defendant fails to communicate with the person the defendant solicits if the defendant's conduct was designed to effect such communication.

(a) Are specified by the definition of the offense, and (b) Negative a defense[.]"  HRS § 702-205 (1993).  "An essential or material element of a crime is one whose specification with precise accuracy is necessary to establish the very illegality of the behavior[.]"  State v. Cummings, 101 Hawai'i 139, 144, 63 P.3d 1109, 1114 (2003) (quotation marks and brackets omitted).

"[W]hen interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes."  Coon v. City & Cnty. of Honolulu, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002).  "When construing a[n] [ordinance], our foremost obligation is to ascertain and give effect to the intention of the [City Council], which is to be obtained primarily from the language contained in the [ordinance] itself."  Id.  "[W]e must read [the ordinance's] language in the context of the entire [ordinance] and construe it in a manner consistent with its purpose."  Id.

Defendant was charged with violating ROH § 29-13.2(b), Solicitation With Animals in Waikiki Special District.  ROH § 29-13.2(b) (1999) provides in relevant part:

> Sec. 29-13.2 Prohibition.
> In the Waikiki special district, no person shall use any live animal in furtherance of any solicitation on any public property, except in compliance with all of the following conditions of this section . . .
> . . . .
> (b)  The person conducting the solicitation shall not place the animal on or otherwise transfer the animal to any other person.

15

Id. (emphases added).  Accordingly, the elements of the offense are: (1) a solicitation, (2) use of a live animal in furtherance of the solicitation, (3) a transferring of the animal by the person conducting the solicitation onto another person, and (4) the occurrence of the solicitation on public property in the Waikiki Special District.  ROH § 29-13.2.  Solicitation means "to request or demand money or gifts."  ROH § 29-13.1 (1999).

Thus, based on the plain meaning of ROH § 29-13 as a whole, a request or demand for money or gifts must occur for a person to fall within the purview of ROH § 29-13.2.  Proving that an actual request or demand for money or gifts was made as prescribed by ROH § 29-13.1 is a requisite element of ROH § 29-13.2.

In addition, "the plain language rule of statutory construction . . . does not preclude an examination of sources other than the language of the [ordinance] itself even when the language appears clear upon perfunctory review."  Keliipuleole v. Wilson, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997).  One such source is the legislative history, from which courts may "discern the underlying policy [that] the legislature sought to promulgate."  State v. McKnight, 131 Hawai'i 379, 388, 319 P.3d 298, 307 (2013).  If a court could not examine other sources, such as legislative history, a court may be "unable to determine if a literal construction would produce an absurd or unjust

16

result, inconsistent with the policies of the [ordinance]." Keliipuleole, 85 Hawai'i at 221, 941 P.2d at 304.

The purpose of ROH § 29-13.2 is emphasized in the bill that created the ordinance. The primary concern of the Honolulu City Council (Council) in passing Bill 108, FD1 (1996) was that "a new form of solicitation has been occurring on the crowded sidewalks and public places of Waikiki: Persons soliciting monetary donations, purportedly for wildlife preservation or environmental causes, have been carrying brightly colored exotic birds -- usually parrots -- to attract and stop pedestrians." Bill 108, FD1 at 1 (1996) (passed as Ordinance 97-66) (emphases added). The Bill notes that "[t]here are reports of unscrupulous solicitors demanding a fixed amount of money from these tourists, and refusing to give back the tourist's camera until payment is made." Bill 108, FD1 at 1 (1996) (emphasis added).

The Council found that the "regulation of solicitation using animals" was necessary to prevent fraud, ensure the orderly flow of pedestrian traffic, protect the public against injuries and disease from the animals, and preserve and protect the aesthetic ambiance of Waikiki. Id. at 2 (emphasis added). However, the Council added, "[a]t the same time, the Council desires to protect and preserve the rights to conduct expressive activities under the First Amendment of the United States

17

Constitution and Article I, Section 4 of the Constitution of the State of Hawaii."   Id.

Thus, the Council enacted ROH § 29-13.2 to regulate persons who made requests or demands of money from tourists or others and used animals in furthering the solicitation.  The Council did not seek to prevent persons from displaying animals in Waikiki or even from allowing other people to have their pictures taken with animals in Waikiki.  The Council sought instead to prohibit a person from requesting or demanding money or gifts from another person and using an animal to further the solicitation unless specific guidelines were followed.[9] Therefore, requiring the State to prove that an actual request or demand for money or gifts occurred in order to convict a person of violating ROH § 29-13.2 is in accordance with the Council's purpose in enacting the ordinance and with the ordinance's plain meaning.

The complaint in this case sets forth the elements of the offense defined in ROH § 29-13.2, stating that "[Abel] did intentionally, knowingly, or recklessly use any live animal in furtherance of any solicitation . . . in violation of [ROH §] 29-13.2(b)[.]"  The complaint included the definition of the term "solicitation," as meaning "to request or demand money or

_____

[9]     Those guidelines are outlined in subsections (a)-(e) in ROH § 29-13.2.  See supra note 1.

18

gifts." [ROA 4-5] Thus, the complaint correctly alleges that proof of a request or demand for money or gifts must be proved by the State in order to convict Abel of violating ROH § 29-13.2.

**B.**

The district court appears not to have considered solicitation to be an essential element of the case. The court did not make a factual finding that a request or demand for money or gifts was made, or that any of Abel's gestures or words indicated a request or demand for money. The court's oral findings stated only that "there was an exchange of cash immediately following the activity of picture taking." [Tr. 12/17/12 at 22]

Similarly, the district court's written findings of facts stated that "Officer Christensen observed Defendant placing birds on an individual while on Kalakaua Avenue. Defendant then took pictures of the individual with the birds. The individual then handed Defendant an unknown amount of money." Thus, the court also did not make a written finding that Abel made a request or demand for money or gifts.

The district court's conclusion of law ¶ 2 stated "when Defendant . . . placed birds on another individual, took pictures of said individual with the birds, then accepted an unknown amount of money, Defendant intentionally, knowingly or

19

recklessly solicited with animals in the Waikiki Special District." This conclusion of law indicates that in the court's view, "when Defendant placed birds on another individual, took pictures . . . then accepted money," the Defendant had "solicited with animals."

The State appears to have analyzed the statute in a similar manner as the district court. The State asserts that it "does not need to prove that a 'solicitation' actually took place, as defined by ROH § 29-13.1." The State focuses instead on the words "in furtherance," and argues that, absent proof of an actual request for money or gifts, a person could be convicted of violating ROH § 29-13.2 if the person's conduct sufficiently "promoted" solicitation and the person acted in a way contrary to one of ROH § 29-13.2's specific subsections.

However, neither the State's nor the district court's analysis is correct. The purpose of ROH § 29-13.2, based upon its plain meaning and its legislative history, is to prevent a specific form of solicitation. A solicitation is an essential element of ROH § 29-13.2, and a solicitation is defined as a request for money or gifts. See HRS § 702-205; Cummings, 101 Hawai'i at 144, 63 P.3d at 1114; ROH § 29-13.1. Thus, the State was required to prove that a request or demand for money or gifts was made in order to prove the offense.

The district court made no finding that a request or demand for money had occurred. By not requiring proof of this element, the district court found Abel guilty of violating ROH § 29-13.2(b) without requiring proof of a solicitation.

## c.

Based on our determination that a request or demand for money or gifts is an element of ROH § 29-13.2, we consider whether there was sufficient evidence to support the conviction. The standard of review for sufficiency of the evidence is well established:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction[.] The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

State v. Eastman, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (emphasis added). Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." State v. Fields, 115 Hawai'i 503, 512, 168 P.3d 955, 964 (2007) (brackets omitted); see also Eastman, 81 Hawai'i at 135, 913 P.2d at 61.

As discussed, the offense of Solicitation With Animals in Waikiki Special District requires that the State establish that a request of money or gifts was in fact made. ROH §§ 29-

21

13.1 and 13.2. However, the evidence showed only that Abel transferred an animal to another person, took a picture of that person, and then that person gave Abel money. The State's only witness acknowledged that she could not hear anything said by or to Abel. Consistent with the evidence presented, the district court made no finding of a request or demand for money.

The ICA found that Abel "used his birds in furtherance of solicitation by reaching out to people with his birds, placing his birds onto other people," and then taking pictures of the people and receiving money from them. (Emphasis added). However, in describing the conduct of "reaching out to people with his birds," Sgt. Christensen was answering a specific question as to how Abel transferred the birds to other people, not describing a request or demand for money or gifts. Consequently, Abel's reaching out to place the birds on the individuals did not provide substantial evidence that Abel made a request or demand for money or gifts.

Further, there were no other facts circumstantially showing a request or demand for money. Sgt. Christensen did not hear any conversations between Abel and other individuals, or overhear any statement or comment regarding a fee. There was no evidence that Abel had a sign requesting money or a tip jar on the public sidewalk that would imply money was expected. Likewise, there was no evidence that Abel made any hand or head

gestures indicating a request for money.  Thus, there was insufficient evidence to show solicitation, and consequently insufficient evidence to sustain Abel's conviction under ROH § 29-13.2(b).[10]

## V.  Conclusion

Accordingly, the ICA erred in affirming Abel's conviction, and the ICA's Judgment on Appeal and the district court's judgment of conviction are reversed.

James S. Tabe
for petitioner

Keith M. Kaneshiro and
Brandon H. Ito
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



---

[10]    In State v. Xiao, 123 Hawai'i 251, 231 P.3d 968 (2010), the defendant was accused of prostitution for engaging in sexual conduct with an undercover police officer after the officer purchased forty-dollar drinks for her.  Id. at 252-255, 231 P.3d at 969-972.  The Xiao court held that there had to be a causal link between the payment of the fee and the illegal activity: "there must be evidence of an understanding on the part of [the defendant] that the forty-dollar drink (i.e., the 'fee') paid for by [the officer] was to buy sexual favors from her.  Without such evidence, there can be no prostitution."  Id. at 260, 231 P.3d at 977.

The offense of Solicitation With Animals in Waikiki Special District likewise requires a link between the "use" of "any live animal" and the "request or demand [for] money or gifts."  ROH §§ 29-13.1-13.2.  Because the State did not prove a solicitation had been made in this case, the requirement of a link between the solicitation and the use of the animal is not presented.