313 P.3d 708

**STATE of Hawai'i, Respondent/Plaintiff-Appellee,**

v.

**Chad GETZ, Petitioner/Defendant-Appellant.**

**No. SCWC–12–0000009.**

Supreme Court of Hawai'i.

Nov. 8, 2013.

---

Summer M.M. Kupau, for petitioner.

James M. Anderson, Honolulu, for respondent.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, McKENNA, and POLLACK, JJ.

Opinion of the Court by POLLACK, J.

Petitioner/Defendant–Appellant Chad Getz (Getz) appeals from the April 17, 2013 Judgment on Appeal of the Intermediate Court of Appeals (ICA), affirming the Judgment of

Conviction and Sentence entered by the Circuit Court of the First Circuit (circuit court) on December 7, 2011. For the reasons stated herein, we hold that the circuit court erred by failing to give a specific unanimity instruction and that this error was not harmless beyond a reasonable doubt. Accordingly, we vacate the ICA and circuit court judgments and remand the case for a new trial.

## I.

On May 2, 2011, Respondent/Plaintiff-Appellee State of Hawai'i (State) charged Getz with committing the offense of Robbery in the Second Degree in violation of Hawai'i Revised Statutes (HRS) § 708–841(1)(a).[1] The State's Complaint charged:

> On or about the 21st day of April, 2011, in the City and County of Honolulu, State of Hawai'i, CHAD GETZ, while in the course of committing a theft from Nordstrom, Inc., did use force against Angela Rueber and/or Jessie Saffery, a person who was present, with intent to overcome Angela Rueber's and/or Jessie Saffery's physical resistance or physical power of resistance, thereby committing the offense of Robbery in the Second Degree[.]

(Emphases added).

Getz's jury trial commenced on September 26, 2011.[2] The State called two witnesses to testify: Nordstrom loss prevention manager Angela Rueber (Rueber) and Nordstrom loss prevention agent Jessie Saffery (Saffery).

Around 9 p.m. on April 21, 2011, Rueber and Saffery were in the Loss Prevention office, located on Nordstrom's first floor, conducting routine surveillance of the store using the store's closed-circuit television system. Rueber and Saffery observed Getz enter the store and walk down the escalator carrying an Old Navy shopping bag. They watched as Getz selected a Coach handbag and walked away from the handbag department. At that point, Rueber left the security office to pursue Getz, while Saffery re-

mained in the office and continued watching the monitor. Rueber and Saffery maintained communication using two-way radios with concealed ear pieces.

After Getz selected the handbag, he placed it on his shoulder with the Old Navy shopping bag. Saffery informed Rueber that Getz had walked past the cash register. Rueber caught sight of Getz heading in the direction of the exit towards the parking garage. Rueber testified that Getz "look[ed] back a couple of times" and "put[ ] the handbag over his shoulder" so that it was "sandwiched" between the shopping bag and his back. As Rueber followed Getz out of the exit, she had a Nordstrom salesperson accompany her. The salesperson was "approximately five feet behind" Rueber as they proceeded to the exit.

Saffery testified that after she saw Getz exit the store, she also left the Loss Prevention office and ran to assist Rueber in apprehending Getz.

Rueber testified that after Getz exited the store, he walked towards the stairwell. Rueber caught up to Getz at the entrance to the stairs and told him that she was with Nordstrom Loss Prevention and that he needed to come back into the store with her. Getz turned to face her and responded, "[N]o, I'm not going anywhere with you," then turned away and continued walking. Rueber grabbed the handbag. Getz did not let go of the bag and began walking down the stairs, as Rueber continued to hold on to the strap of the handbag. Rueber testified, "[W]e were playing tug-of-war with [the strap of the handbag] and he continued to walk down and I went down the stairs with him 'cause I didn't let go of the bag."

Rueber then tried to stop Getz from going down the stairs by holding on to the bag with her right hand, putting her left arm out in front of Getz, and grabbing the handrail with her left hand. Getz slowed down momentari-

---

1. HRS § 708–841 (Supp.2011) provides in relevant part:
   (1) A person commits the offense of robbery in the second degree if, in the course of committing theft or non-consensual taking of a motor vehicle:

(a) The person uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance[.]

2. The Honorable Glenn J. Kim presided.

ly but "broke through" her arm with his "body weight" and continued down the stairs. Getz and Rueber continued to hold on to the bag down three flights of stairs, for approximately two minutes. Rueber testified that Getz did not run down the stairs.

While Rueber and Getz walked down the stairs, Rueber tried unsuccessfully to pin Getz against the rail and to sweep him off his feet by wrapping her legs between his legs to make him lose balance. Getz "used his weight to push through [Rueber] and continue down the stairs," but did not punch or kick Rueber, try to throw her off of him, or verbally threaten her.

At some point, Saffery caught up to Rueber and Getz on the stairwell. Rueber could not remember when Saffery arrived on the stairs. Saffery testified that she arrived when Rueber and Getz were on the first flight of stairs. Saffery stated that upon catching up to Rueber and Getz, she "tried to stop [Getz] along with [Rueber], but we just kept going down the next flight of stairs."

Rueber testified that "somewhere between the second landing and the third flight of stairs," she "ripped out" the handbag from Getz's grip "either by my force or I pulled it away." She then put Getz's hand behind his back. However, she testified that Getz did not stop walking at that point, and they "continued down to the third landing where it stopped."

According to Rueber, they stopped on the third landing when "[Saffery] arrived and [Getz] said he was going to jump over the railing, so I grabbed onto his shirt and there was a police officer that showed up and shouted that he better listen to me. And that's when he all of a sudden became compliant."

Rueber explained that Saffery helped her pull Getz's arms behind his back and recovered her handcuffs, which she had dropped on the stairs just before Getz stopped on the third landing. Rueber testified that she and Saffery "were trying to get [Getz's] arms behind his back ... but he was obviously resisting. And then he stopped resisting once the officer was there." She stated that

the police officer stood "at the top of the third flight of stairs." However, the officer did not become physically involved in the incident and "did not have any involvement after that."

According to Saffery, Getz was "detained" on the third landing when they "actually stopped." Saffery explained that she, Rueber and Corpuz "ended up getting [Getz] against the corner of the rail," with Rueber on one side, and the salesperson "holding [Getz's] other arm." After Getz was cornered, she went to retrieve Rueber's handcuffs.

After Getz was handcuffed, Rueber and Saffery escorted Getz back to the Loss Prevention office. Getz walked back to the office willingly and was cooperative. Rueber recovered the handbag. Getz was later released by the Loss Prevention officers to police custody.

About two minutes passed between the time Getz exited and returned to the store. Rueber testified that throughout the entire event, Getz did not "put a hand" on either her or Saffery. Saffery, on the other hand, testified that Getz "grabbed" her arm during the two-minute period, although she did not specify when this occurred. She also admitted that she did not mention this in her written statement,[3] and could not recall whether she previously testified at a prior hearing that Getz had grabbed her. Saffery testified that Getz did not kick her or threaten her verbally, or punch or assault Rueber.

The State rested, and the defense presented no witnesses.

### A.

The court instructed the jury on the offense of Robbery in the Second Degree as follows:

> A person commits the offense of Robbery in the Second Degree if, in the course of committing theft, he uses force against the person of anyone present, with intent to overcome that person's physical resistance or physical power of resistance.

---

3. Saffery "wrote a report describing the events of this case right after the police came."

There are two material elements of the offense of Robbery in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

(1) That on or about the 21st day of April, 2011, in the City and County of Honolulu, State of Hawaiʻi, the defendant was in the course of committing theft; and

(2) That while doing so, the defendant used his force against Angela Rueber and/or Jessie Saffery, a person who was present, with intent to overcome Angela Rueber and/or Jessie Saffery's physical resistance or physical power of resistance.

(Emphasis added). This instruction was given by agreement pursuant to the court's proposed jury instructions.

During the settling of jury instructions, the court withdrew its standard unanimity instruction, which provided:

The law allows the introduction of evidence for the purpose of showing that there is more than one [act] [omission] [item] upon which proof of an element of an offense may be based. In order for the prosecution to prove an element, all twelve jurors must unanimously agree that [the same act] [the same omission] [possession of the same item] has been proved beyond a reasonable doubt.

(Brackets in original). Defense counsel objected, explaining, "in an abundance of caution because it's a two-minute interval I think where the issue lies on the stairwell, I would think that, perhaps, that the jury would have to be unanimous at what point ... in the entire case that the Robbery would occur at." The court responded that it would withdraw the instruction over defense objection because "the alleged facts as they are in this case, no Arceo is necessary." The jury was not instructed that it was required to agree unanimously as to the identity of the person against whom Getz used force—either Rueber or Saffery.

During the State's closing argument, the State consistently referred to Rueber and Saffery collectively, arguing, "They attempted to prevent Chad Getz from leaving with Nordstrom merchandise. They resisted his ability to escape with Nordstrom property as security." (Emphases added). The State described the facts of the case, stating, "They were physically resisting [Getz's] ability to leave with that bag, first grabbing the bag, then attempting to grab him, and that's exactly the reason why he was continuing to push down those stairs, ... despite having two ... loss prevention officers hanging off of him, trying to stop him[.]" (Emphasis added).

Accordingly, the State argued with respect to the elements of robbery: "[Getz] was in the course of committing theft, he used force against Angela Rueber or Jessie Saffery, and with the intent to overcome their physical resistance or power of resistance." (Emphases added). The State focused specifically on the "and/or" language of the jury instruction, and argued, "That means you can believe he used [force] against Angela Rueber or Jessie Saffery or both. And in reality it's all of the above."

The State reiterated, "All [the law] requires is that he used force against them with the intent to overcome their physical ... power of resistance," and concluded, "The defendant in the course of committing theft ... encountered two dedicated professional security officers, and when they attempted to do their jobs, he used force to try and get past them." (Emphases added).

That same day, the jury returned its verdict, finding Getz guilty as charged of Robbery in the Second Degree.

On December 7, 2011, the circuit court sentenced Getz to ten years of imprisonment with a mandatory minimum term of four years as a repeat offender.[4] The court reduced the mandatory minimum term from ten years to four years based on a finding of strong mitigating circumstances, reasoning that "Defendant's criminal conduct neither caused nor threatened serious harm to any-

4. HRS § 706–606.5(5) (Supp.2011) authorizes the sentencing court to reduce the mandatory minimum term mandated in HRS § 706–606.5(1) upon a finding of strong mitigating circumstances, which include but are not limited to the circumstances provided for in HRS §§ 706–621 and 706–606.

one," and "8 or 9 juries out of 10 would have acquitted the defendant of Robbery and probably convicted defendant of a lower class C theft felony."

## II.

On appeal to the ICA, Getz argued that the evidence was insufficient to prove that he used force "with the intent to overcome the loss prevention officers' physical resistance or physical power of resistance." Getz emphasized that there was no evidence that he punched, kicked or threatened Rueber or Saffery, and argued that at most, he held onto the handbag and continued walking away, which was insufficient to prove the force element of robbery in the second degree.

The ICA rejected Getz's argument and held that "[t]here was substantial evidence for the jury to conclude that in the course of committing theft of a handbag, Getz used force <u>against Rueber</u> with the intent to overcome her physical resistance or physical power of resistance in the flight after the commission of the theft." [5] *State v. Getz*, No. CAAP–12–0000009, 129 Hawai'i 268, 2013 WL 1117409, at *1 (Haw.App. Mar. 18, 2013) (SDO) (emphasis added). Accordingly, the ICA affirmed Getz's conviction.

In his Application to this court, Getz maintains that "the ICA gravely erred in concluding that there was substantial evidence to sustain Petitioner's conviction for Robbery in the Second Degree."

## III.

■■■ "[T]he right of an accused to a unanimous verdict in a criminal prosecution, tried before a jury in a court of this state, is guaranteed by article I, sections 5 and 14 of the Hawai'i Constitution." [6] *State v. Arceo*, 84 Hawai'i 1, 30, 928 P.2d 843, 872 (1996). " '[I]n criminal cases, this requirement of unanimity extends to all issues which are left

to the jury.' " *Id.* (citing *Andres v. United States*, 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948)) (brackets and ellipses omitted). "The jury must unanimously find that each material element of the offense has been proven—the conduct, the attendant circumstances, and the result of conduct—as well as the mental state requisite to each element." *State v. Jones*, 96 Hawai'i 161, 169, 29 P.3d 351, 359 (2001). "[I]nasmuch as, pursuant to this precept of constitutional law, an accused in a criminal case can only be convicted upon proof by the prosecution of every material element of the crime charged beyond a reasonable doubt, the constitutional precept also implicates the defendant's right to due process of law[.]" *Arceo*, 84 Hawai'i at 30, 928 P.2d at 872 (quotation marks, ellipses and citations omitted).

In *Arceo*, the prosecution aggregated the defendant's multiple acts of alleged sexual contact into one count of the indictment and multiple acts of alleged sexual penetration into a second count. *Id.* at 3, 928 P.2d at 845. On appeal, the defendant argued in part that the prosecution was required to identify the specific act of sexual contact and penetration for which it was seeking the two convictions or alternatively, that the trial court was required to instruct the jury that it must unanimously agree on the same act(s) in reaching guilty verdicts. *Id.* at 27, 928 P.2d at 869. In addressing the defendant's argument as a matter of first impression, the *Arceo* court concluded as an initial matter that sexual assaults are not "continuing offenses" because the applicable statutes provide that each distinct act in violation of the statutes constitutes a separate offense under the Hawai'i penal code. *Id.* at 21–22, 928 P.2d at 863–64.

The court then found that jurisdictions "holding that sexual assaults are not 'continuing offenses' appear to be in agreement that, where evidence of multiple culpable acts is adduced to prove a single charged offense,

---

5. The Honorable Craig H. Nakamura, Katherine G. Leonard, and Lisa M. Ginoza presided.

6. Article I, section 5 provides in relevant part that "[n]o person Shall be deprived of life, liberty or property without due process of law[.]" Haw. Const. art. I, § 5. Article I, section 14 provides

in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury.... Juries, where the crime charged is serious, shall consist of twelve persons." Haw. Const. art. I, § 14.

the defendant is entitled either to an election by the prosecution of the single act upon which it is relying for a conviction or to a specific unanimity instruction." *Id.* at 30–31, 928 P.2d at 872–73. The court also reviewed a long line of federal decisions decided outside of the context of sexual assaults, holding that a general unanimity instruction [7] is not sufficient when a "conviction may occur as a result of different jurors concluding that the defendant committed different acts[.]" *Id.* at 32, 928 P.2d at 874 (quoting *United States v. Echeverry,* 719 F.2d 974, 975 (9th Cir.1983)). "To correct any potential confusion in such a case, the trial judge must augment the general instruction to ensure that the jury understands its duty to unanimously agree to a particular set of facts." 84 Hawai'i at 32, 928 P.2d at 874 (quoting *Echeverry,* 719 F.2d at 975).

The *Arceo* court agreed with the logic of these decisions and therefore held that

when separate and distinct culpable acts are subsumed within a single count charging a sexual assault—any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, *i.e.,* an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*Id.* at 32–33, 928 P.2d at 874–75 (emphases added). Applying this standard, the court held that the trial court erred in failing to give a specific unanimity instruction, and that this error required vacating the defendant's conviction. *Id.* at 33, 928 P.2d at 875.

■ Accordingly, "the purpose of an *Arceo* unanimity instruction is to eliminate any am-biguity that might infect the jury's deliberations respecting the particular conduct in which the defendant is accused of engaging and that allegedly constitutes the charged offense." *State v. Valentine,* 93 Hawai'i 199, 208, 998 P.2d 479, 488 (2000).

In *Valentine,* the court explained that "absent an election by the prosecution" of the specific act upon which it is relying to establish the conduct element of the charged offense, "two conditions must converge before an *Arceo* unanimity instruction . . . is necessary: (1) at trial, the prosecution adduces proof of two or more separate and distinct culpable acts; and (2) the prosecution seeks to submit to the jury that only one offense was committed." *Id.*

In this case, Getz was charged with a single count of robbery in the second degree, which requires proof beyond a reasonable doubt that the defendant "use[d] force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance." HRS § 708–841(1)(a).

In *State v. Cordeiro,* 99 Hawai'i 390, 407–08, 56 P.3d 692, 709–10 (2002), the court held that a specific unanimity instruction was required, where the defendant was charged with a single offense of robbery and the prosecution adduced evidence that the defendant used force against two individuals; the decedent and a witness. The two acts of force took place during the same sequence of events. The witness drove the decedent and then waited in the car while the decedent got out and spoke to the occupant of a second vehicle parked nearby. *Id.* at 400, 56 P.3d at 702. The witness heard a gunshot and observed the decedent lying by the side of the road, bleeding. *Id.* The witness tried to start his car engine but the defendant ran up to him and pointed a gun at his head, ordered him out of the car and instructed him to dispose of the decedent's body. *Id.* At trial, the prosecution submitted to the jury that the defendant's alleged act of shooting the decedent or threatening the witness could

---

7. In *Arceo,* the jury was instructed generally that "your verdict must be unanimous." 84 Hawai'i

at 10, 928 P.2d at 852.

support a guilty verdict as to first degree robbery. *Id.* at 407, 56 P.3d at 709. The circuit court generally instructed the jury that its verdict must be unanimous, but did not instruct the jury that it was required unanimously to agree as to the identity of the person against whom the defendant used force. *Id.*

On these facts, the defendant argued that the trial court plainly erred by failing to give a specific unanimity instruction as to the identity of the person against whom the defendant used force. *Id.* The prosecution conceded that the trial court's error warranted vacating the defendant's robbery conviction. *Id.* The *Cordeiro* court agreed with the prosecution's concession, finding that a

> review of the record confirm[ed] that the circuit court's instructions were prejudicially insufficient and erroneous, inasmuch as the prosecution (1) adduced evidence of two separate and distinct acts that arguably supported the requisite "use of force" by [the defendant] (*i.e.*, shooting [the decedent] and threatening [the witness] with a firearm) (2) failed to make an election as to the particular act on the basis of which it was seeking conviction, and (3) represented to the jury that only a single offense was committed but that either act could support a guilty verdict as to first degree robbery.

*Id.* (emphases added). Thus, the court held that the "circuit court plainly erred in failing to instruct the jury that it was required to agree unanimously as to the person against whom [the defendant] used force," and vacated the defendant's robbery conviction. *Id.* at 407–08, 56 P.3d at 709–10.

■ Similarly in this case, the State adduced evidence of Getz's use of force against two people, Rueber and Saffery, failed to make an election as to the person against whom Getz used force, and represented to the jury that Getz's use of force against either person could support a single offense of robbery in the second degree. With regard to Rueber, the State presented evidence that Getz and Rueber "played tug-of-war" with the handbag as they walked down the stairs and that Getz "used his weight" to continue walking as Rueber attempted various maneuvers to stop him. As for Saffery, the State presented evidence that Getz continued to walk down the stairs as Saffery attempted to help Rueber stop him, and that Getz "grabbed" Saffery's arm.

The State did not elect whether it was relying on the use of force against Rueber or Saffery to establish the requisite conduct element. The State argued to the jury during closing argument that because of the "and/or" language used in the jury instruction, "[t]hat means you can believe he used [force] against Angela Rueber or Jessie Saffery or both." Additionally, no specific unanimity instruction was given to the jury, informing them that they were required to agree unanimously as to the identity of the person against whom Getz used force. Instead, the jury was instructed that it could return a guilty verdict on the robbery offense if it found beyond a reasonable doubt that "the defendant used his force against Angela Rueber and/or Jessie Saffery, ... with intent to overcome Angela Rueber and/or Jessie Saffery's physical resistance or physical power of resistance." (Emphases added).

Therefore, in returning the guilty verdict as to second degree robbery, some jurors may have believed that Getz used force against Rueber but not Saffery, other jurors may have believed that he used force against Saffery but not Rueber, and still others may have believed that Getz used force against both Rueber and Saffery. Under these circumstances, an *Arceo* unanimity instruction was required to "eliminate any ambiguity that might [have] infect[ed] the jury's deliberations respecting the particular conduct in which [Getz] [was] accused of engaging and that allegedly constitute[d]" the offense of robbery in the second degree. *See Valentine,* 93 Hawai'i at 208, 998 P.2d at 488. Accordingly, the circuit court erred in failing to instruct the jury that it was required to agree unanimously as to the person against whom Getz used force.

## IV.

■ "This court has stated that when jury instructions or the omission thereof are at issue on appeal, the standard of review is

whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading." *State v. Mark,* 123 Hawai'i 205, 219, 231 P.3d 478, 492 (2010) (citing *State v. Gomes,* 93 Hawai'i 13, 18, 995 P.2d 314, 319 (2000)) (quotation marks and brackets omitted). "[T]he real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." *Arceo,* 84 Hawai'i at 12, 928 P.2d at 854 (citing *State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) and *State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917 (1995)) (quotation marks, brackets and citations omitted).

In this case, Getz objected to the circuit court's withdrawal of the standard unanimity instruction. The court responded that an *Arceo* instruction was not necessary based on the alleged facts. However, Getz did not raise the lack of a specific unanimity instruction as a point of error on appeal to the ICA. *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(4) (point of error not presented on appeal in accordance with Rule 28 "will be disregarded, except that the appellate court, at its option, may notice a plain error not presented").

In *Arceo,* the court held that the circuit court's failure to give a specific unanimity instruction prejudiced the defendant's "substantial constitutional right to unanimous jury verdicts ... in such a manner as to give rise to plain error." 84 Hawai'i at 33, 928 P.2d at 875. The court continued, "And inasmuch as we cannot say that there was no reasonable possibility that the circuit court's error contributed to Arceo's convictions, we hold that the error was not harmless beyond a reasonable doubt." *Id.* The court thus vacated Arceo's conviction and remanded the matter for a new trial.[8] *Id.*

In accordance with *Arceo,* subsequent cases finding that the trial court erroneously failed to give a specific unanimity instruction have applied plain error, vacated the conviction, and remanded for a new trial. *See Cordeiro,* 99 Hawai'i at 408, 56 P.3d at 710 ("Because the circuit court's insufficient jury instructions prejudiced Cordeiro's substantial constitutional right to a unanimous jury verdict, the error was 'plain'."); *State v. Kassebeer,* 118 Hawai'i 493, 511, 193 P.3d 409, 427 (2008) ("Under *Arceo* and its progeny, it was plain error for the circuit court not to issue a specific unanimity instruction to the jury").

Accordingly, pursuant to *Arceo,* the circuit court's failure to give a specific unanimity instruction in this case constituted plain error. As to whether there was a reasonable possibility that the error contributed to the conviction, Getz's alleged culpable conduct occurred within two minutes and involved both Rueber and Saffery. Absent a specific unanimity instruction, the jurors may not have been in agreement over the identity of the person against whom Getz used the requisite force.

Furthermore, as the circuit court recognized in the sentencing phase of this case, "Defendant's criminal conduct neither caused nor threatened serious harm to anyone." The circuit court found that "8 or 9 juries out of 10 would have acquitted the defendant of Robbery and probably convicted defendant of a lower class C theft felony."

Based on the above, there is at least a reasonable possibility that the circuit court's error in failing to give a specific unanimity instruction contributed to Getz's conviction. Therefore, the error was not harmless beyond a reasonable doubt, and Getz's second degree robbery conviction must be vacated and the case remanded to the circuit court for a new trial.

## V.

■ In light of the remand, we address the sufficiency of the evidence supporting Getz's conviction. *See State v. Kaulia,* 128 Hawai'i 479, 496, 291 P.3d 377, 394 (2013) ("The Double Jeopardy Clause bars retrial of

---

8. The court found that because the "evidence adduced at trial was clearly sufficient to support Arceo's convictions, double jeopardy concerns are not implicated by a new trial." *Id.* at 33 n. 40, 928 P.2d at 875 n. 40.

a defendant where reversal is based on the insufficiency of the evidence."); *Arceo*, 84 Hawai'i at 33 n. 40, 928 P.2d at 875 n. 40 ("Because our disposition of the present appeal is grounded in 'trial error' and the evidence adduced at trial was clearly sufficient to support Arceo's convictions, double jeopardy concerns are not implicated by a new trial.").

■ " 'In reviewing the legal sufficiency of the evidence on appeal, the test is whether, viewing the evidence in the light most favorable to the State, substantial evidence exists to support the conclusion of the trier of fact.' " *Kaulia*, 128 Hawai'i at 496, 291 P.3d at 394 (quoting *State v. Lubong*, 77 Hawai'i 429, 432, 886 P.2d 766, 769 (App.1994)).

In this case, Getz used his body weight to continue walking down the stairs while Rueber and Saffery attempted to stop him, and held onto the handbag when Rueber attempted to pull it away from him. Rueber testified that Getz was "obviously resisting" while she and Saffery attempted to detain him, and Saffery testified that Getz grabbed her arm. Although Getz appears to have used minimal force, when viewing the evidence in the light most favorable to the State, there was sufficient evidence adduced to support his conviction. *State v. Chen*, 77 Hawai'i 329, 338, 884 P.2d 392, 401 (App.1994) (" 'Issues going to reasonable doubt are generally matters for the fact finder to determine.' ") (quoting *State v. Gabrillo*, 10 Haw.App. 448, 457, 877 P.2d 891, 895 (1994)) (brackets and ellipses omitted).

Accordingly, double jeopardy concerns are not implicated by remanding the case for a new trial based on the circuit court's failure to give a specific unanimity instruction.

## VI.

Based on the foregoing, we hold that the circuit court plainly erred by failing to instruct the jury that it was required to agree unanimously as to the person against whom Getz used force. We therefore vacate the ICA and circuit court judgments and remand the case for a new trial.