**\*\*\*  FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER   \*\*\***

**Electronically Filed
Supreme Court
SCWC-14-0000427
08-AUG-2016
07:51 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---oOo---

_____

STATE OF HAWAIʻI, Respondent/Plaintiff-Appellee,

vs.

EUGENE PARIS, JR., also known as
EUGENE J.E. RIVERA, JR., Petitioner/Defendant-Appellant.

_____

SCWC-14-0000427

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000427; CR. NO. 12-1-0191)

AUGUST 8, 2016

McKENNA, POLLACK, AND WILSON, JJ.,
WITH RECKTENWALD, C.J., CONCURRING AND DISSENTING,
WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY McKENNA, J.

**I.    Introduction**

At issue in this appeal is whether

Petitioner/Defendant/Appellant Eugene Paris, Jr. ("Paris"), a

furloughee on extended furlough in the community, who failed to

check in with his case manager at Laumaka Work Furlough Center

("LWFC"), can be convicted of escape in the second degree, in

violation of Hawaiʻi Revised Statutes ("HRS") § 710-1021 (2014). We hold that, under the facts of this particular case, failure to check in while on extended furlough is not punishable as escape in the second degree.

HRS § 710-1021 states, "A person commits the offense of escape in the second degree if the person intentionally escapes from a correctional or detention facility or from custody. Escape in the second degree is a class C felony."  The State proceeded on a theory that Paris escaped from "custody" (i.e., not from a correctional or detention facility).  HRS § 710-1000 (2014) defines "custody" as "restraint by a public servant pursuant to arrest, detention, or order of a court."

On certiorari, Paris contends that the ICA gravely erred in affirming his conviction and rejecting his arguments that (1) the charge was deficient for failing to define "custody"; (2) insufficient evidence supported his conviction; and (3) the Circuit Court of the First Circuit[1] ("circuit court") erroneously instructed the jury on "custody."[2]  We agree.

Central to this appeal is what constitutes "custody" for the purpose of the offense of escape in the second degree.  We

---

[1]    The Honorable Rom A. Trader presided.
[2]    Paris also argues that the ICA gravely erred in rejecting his arguments that (1) the prosecutor committed misconduct by misstating the requisite state of mind for the offense; and (2) the circuit court abused its discretion by failing to apply the doctrine of judicial estoppel.  In light of our disposition of this case, we find it unnecessary to address these arguments.

agree with Paris that the meaning of "custody" shifted throughout the proceedings below.  First, the circuit court defined "custody" with reference to our case law; next, the circuit court nevertheless concluded that the term "custody" was a term susceptible to common understanding; lastly, the circuit court stated "custody" meant "confinement."  We have accepted certiorari in this case to clarify that, for purposes of escape in the second degree, "custody" means "restraint by a public servant pursuant to arrest, detention, or order of a court." HRS § 710-1000.

"Custody," thus defined, is not "an unmistakable term readily comprehensible to a person of common understanding"; therefore, the statutory definition of "custody" should have been included in the charging instrument.  Further, the State was required to prove, beyond a reasonable doubt, that Paris intentionally escaped from custody, as defined in HRS § 710-1000, not just that he violated the terms of his furlough agreement and extended furlough agreement by failing to check in with his LWFC case manager.  Lastly, although the circuit court properly instructed the jury on the statutory definition of custody, it also submitted another jury instruction on custody that was inconsistent with the statutory definition, erroneous, and misleading.  Due to the insufficiency of the evidence adduced at trial, we reverse the ICA's September 22, 2015

3

judgment on appeal and the circuit court's January 14, 2014 judgment of conviction and sentence.

## II.   Background

### A.   The Furlough Agreement

In June 2011, Paris and his case manager, Noel Villanueva; his unit manager, Wendel Yoda; and the Oahu Center Warden, Francis Sequeira, signed and entered into a Furlough Agreement. The Furlough Agreement "define[d] mutual responsibilities and provide[d] an opportunity for [Paris] to demonstrate readiness for parole and to prepare for successful parole or release by establishing or re-establishing family and community ties." Paris's Furlough Site was listed as his parents' Wahiawa home. Under the heading "Part I- Rules and Regulations of the Furlough Agreement," Paris initialed 35 items (some of which included sub-items).

Complicating our review of whether a furloughee's failure to check in constitutes a crime are provisions in the Furlough Agreement that are unclearly worded but that seem to call for administrative, rather than criminal, consequences for escape.  The Furlough Agreement term the State relies upon as the basis for Paris's escape charge and conviction is Item 9, which provides for "process[ing]" or "list[ing]" as an "escapee" upon a furloughee's failure to return to LWFC:

4

> 9.  I understand and agree that I shall be <u>processed as an escapee</u> if I fall into one or more of the following stipulations:
> a.  Fail to return to the Laumaka Work Furlough Center (LWFC) or OCCC [Oahu Community Correctional Center] at the designated day and time as stated in this Agreement or on my pass and/or fail to seek permission for an extension of the designated return time.
> b.  Fail to return to LWFC or OCCC in a timely manner when I am directed to do so regardless of the expiration time stated on the pass.
> I further understand that <u>should I be listed, as an escapee under any of the aforementioned conditions, my pass will be deemed null and void.</u>

(Emphasis added.)  Under Item 9, the clear consequence for failure to return to LWFC is that the furlough pass is deemed null and void.  That is an administrative, not criminal, consequence.  Less clear is what occurs when a furloughee is "processed" or "listed" as an "escapee." Other items in the Furlough Agreement suggest an "escape" is merely an "absen[ce] without authorization" rather than a criminal act, the consequences for which are administrative, rather than criminal:

> 29.  I understand and agree that I will not hold the State of Hawaii, Department of Public Safety, and Oahu Community Correctional Center liable or accountable for any of my property when I am declared <u>absent without authorization (escape)</u>.
> 30.  I further understand that my property will be disposed of on the 31st day that I am declared <u>absent without authorization (escape)</u>.

(Emphasis added.)  Underscoring the interpretation that "escape" is not a criminal act is Item 32, which defines "escape" as presence in off-limits areas of LWFC.  The  consequence for that type of escape is an "administrative[] charge[] as an escapee":

> 32.  I understand that should I be observed in the inner perimeter of LWFC, I will be administratively charged as an escapee.  This is defined as the area from the LWFC's fence line to the backside of the Modules, the cabled/chained off areas or the landing directly outside of the escape doors. These areas are clearly marked.

(Emphasis added.)  In short, the items in the Furlough Agreement expressly referencing escape define escape in administrative, not criminal, terms, and provide for administrative, not criminal, consequences.  Further, Item 35, which does not expressly reference escape, reiterates that deviation from the terms of a furlough pass will result in administrative consequences, as follows:

> 35.  I understand and agree that any deviation from the following: date of validity, time expiration, destination, and purpose/intent of any furlough pass will result in the processing of a high misconduct violation and referred to the Adjustment Hearing process.  This may jeopardize continued participation in the furlough program and may result in transfer from OCCC.

(Emphasis added.)

By contrast, the only item threatening criminal prosecution is Item 2, which reads

> 2.  I understand and agree that my failure to comply with furlough conditions shall result in disciplinary action by the Adjustment Committee, forfeiture of furlough privileges and/or possible assignment to a greater control status by the Program Committee, and/or criminal prosecution for the commission of any illegal act.

(Emphasis added.)  Criminal prosecution, however, is listed as the most severe consequence, following a list of escalating administrative consequences, and it appears to be limited just to the commission of "any illegal act."

6

Lastly, this appeal hinges upon the definition of "custody" in the escape statute. Relevant to this appeal, items 1, 8, and 26 seem to contradict each other as to whether Paris, while on furlough, was in the "custody" of the Department of Public Safety ("DPS") and/or the State. Those items read:

> 1. I understand that I remain under the jurisdiction of the Department of Public Safety, Oahu Community Correctional Center (OCCC), Community Based Section, and will comply with all R&R, Policies and Procedures governing said agency. I further understand and agree upon furlough release to comply with all County Ordinances, State Statutes, and Federal Laws.
> . . . .
> 8. I understand and agree that the Program Committee of the Oahu Community Correctional Center may cancel this agreement at any time if I fail to fulfill any terms and conditions of furlough or fail to obey institutional, State and Federal Laws or regulations. All cancellations are grounds for my immediate return to the custody of the Department of Public Safety.
> . . . .
> 26. I will submit urine samples for drug testing whenever requested to do so. I understand that my failure to do so will be considered a positive finding and action will be taken accordingly. Furthermore, as a custody of the State [sic] I understand that my person, property or room maybe [sic] subject to search by the Corrections/Law Enforcement personnel at any time.

(Emphasis added.) Specifically, Items 1 and 26 consider Paris to be "under the jurisdiction" of DPS and "a custody of the State [sic]," respectively, while Item 8 states that the cancellation of the Furlough Agreement is grounds for Paris's "immediate return to the custody" of DPS, suggesting that, while on furlough, Paris is not in the custody of DPS. These unclear and contradictory provisions in the Furlough Agreement make it difficult to conclusively

7

state that noncompliance with the check-in term constitutes criminal "escape" from "custody."

**B. The Extended Furlough Agreement**

In mid-November 2011, Paris's Program Committee determined that Paris "ha[d] not demonstrated any problems while in the community." The Committee also determined that Paris "ha[d] an appropriate residence," namely his parents' Wahiawa home. The Committee recommended placing Paris on Extended Furlough, provided that he comply with the following condition: "Check in once a week with Case Manager Noel Villanueva every Wednesday at 0600 hours." Therefore, at the end of the month, Paris, Villanueva, Yoda, and Sequeira signed and entered into an Extended Furlough Contract. Relevant to this appeal, the Extended Furlough Contract stated:

> The Furloughee agrees to comply with these conditions:
> 1. To adhere to all the rules, regulations, and as stated in the Furlough Agreement, Work Furlough Contract, and set by the Corrections Division.
> . . . .
> 4. To report in person every week to [Case Manager Villanueva or Unit Manager Yoda] for feedback.
> 5. To report in person once a week to obtain a new weekly pass.

The escape charge was predicated on Paris's non-compliance with the weekly reporting requirement of the Extended Furlough Contract.

## C.    Trial Proceedings

### 1.    The Charge

On February 10, 2012, the State filed an Amended Felony Information that stated the following:

> The Department of the Prosecuting Attorney charges:
>
> On or about the 11th day of January, 2012, to and including, February 2, 2012, in the City and County of Honolulu, State of Hawaii, EUGENE PARIS, Jr. also known as Eugene J.E. Rivera, Jr., did intentionally escape from a correctional or detention facility or from custody, thereby committing the offense of Escape in the Second Degree, in violation of Section 710-1021 of the Hawaii Revised Statutes.
> If convicted of this offense or any included felony offense, EUGENE PARIS, Jr. also known as Eugene J.E. Rivera, Jr., may be subject to sentencing in accordance with Section 706-661 and Section 706-662(1) of the Hawaii Revised Statutes where he is a persistent offender in that he has previously been convicted of two or more felonies committed at different times when he was eighteen years of age or older, and an extended term of imprisonment is necessary for the protection of the public.

### 2.    Pre-Trial Motion to Dismiss

Paris filed a Motion to Dismiss Complaint for Failure to State an Offense.  He argued that the escape charge in the complaint failed to define custody; therefore, "the Complaint fail[ed] to allege essential elements of the offense and must be dismissed for lack of subject matter jurisdiction."  In its memorandum in opposition to Paris's motion, the State counter-argued that the term "custody" is "readily comprehensible to a person of common understanding."

The circuit court held a hearing on the motion.  The circuit court began the hearing by quoting the following holding on the meaning of "custody" for second degree escape from State

v. Smith, 59 Haw. 456, 463-64, 583 P.2d 337, 343 (1978): "While [Hawaii Youth Correction Facility] did not have actual physical control over the appellant at the time he is alleged to have escaped [by not returning at the end of his furlough], it had control and custody in the sense that appellant was released on furlough not as a free person but as one legally bound by restrictions." The circuit court denied the motion and issued findings of fact and conclusions of law. Although the circuit court discussed Smith's holding on "custody" at the hearing, the circuit court issued a conclusion of law regarding the statutory definition of "custody," concluding "that the term 'custody,' as defined in HRS § 710-1000, is an unmistakable term readily comprehensible to a person of common understanding," and that the "statutory definition of 'custody' does not create any additional essential elements to the offense of Escape in the Second Degree." In other words, the circuit court concluded that the "Information provided fair notice to Defendant Paris as to all the essential elements of the offense of Escape in the Second Degree."

### 3. Trial

During opening statements, the State's theory of the case was that Paris committed escape by failing to meet with his case manager as required under the furlough agreement and extended furlough work contract. The State explained to the jury that

furlough is "sort of a minimum security."  The defense objected, arguing at the bench that the State was "getting really close to talking about how furlough is still custody, when that's a legal conclusion, which is argument and not what a witness can testify to."  During the bench conference, the circuit court overruled the objection, stating, "Well, there's the legal term custody. There's also custody in a general sense, which means confinement.  So I understand what you're saying."  Thus, it appears that the circuit court considered "custody" to mean "confinement" at this stage of the trial.  During opening statements, Paris's main defense was that his parents' home was the place of detention he was alleged to have escaped from, and the State would present no evidence that he was not at his parents' home.

The State called as its first witness Paris's case manager, Noel Villanueva.  He testified that Paris was in "community custody" at LWFC.  Villanueva stated that he reviewed the June 14, 2011 furlough agreement with Paris, who initialed every term and condition to indicate his understanding.  Villanueva and Paris discussed item 9B of the furlough agreement; Villanueva explained to Paris that the term and condition meant, "Regardless if [Paris] is working at that moment. . ., if I tell him to come back to Laumaka right away, I give him enough time, like two hours to come back, he has to come back."

As for the extended furlough agreement, Villanueva explained that a furloughee on extended furlough "actually leaves to their sponsor or to their family. . . . [He is] given weekly passes, where when he goes home he doesn't live at the Laumaka anymore. I will send him home and he will only see me once a week, and the same day, the same hour every week." Villanueva authorized Paris to live with his parents in Wahiawa and report in person at Laumaka every Wednesday at 6:00 a.m. Villanueva explained the extended work furlough agreement to Paris, and Paris signed it.

On January 4, 2012, at 6:00 a.m., Paris met with Villanueva as scheduled. Villanueva gave Paris a one-week pass and told him to meet him again on January 11, 2012 at 6:00 a.m. Paris did not report to Villanueva on January 11, 2011. Paris did, however, call Villanueva that day; Villanueva told Paris he could come in at 6:00 p.m. and that Villanueva would wait for him. Villanueva waited until 9:00 p.m., but Paris did not check in. Paris did not report to Laumaka at any time between January 11, 2012 and February 2, 2012.

On cross-examination, Villanueva testified, "I explained to [Paris] that he's still under the custody of the Public Safety even if he is on extended furlough. Even if he's not living in the prison, he's living with his mom, he's still under the custody of his – of the Public Safety." He also agreed that

Paris's mother's home was Paris's "place of detention[.]" Villanueva acknowledged that there were different types of escape:  criminal escape, administrative escape, absent without authorization, violent escape, and nonviolent escape.

The State next called Moses Fonoimoana, a sergeant at Laumaka Work Furlough Center who monitors inmates on furlough. He testified that Paris called him on January 11, 2012, and Fonoimoana told him to report back to Laumaka at 6:00 p.m. that day.  Paris did not report to Laumaka at 6:00 p.m. on January 11, 2012.

The State's last witness was Honolulu Police Department police officer Waldron Chung.  He testified that on the night of February 2, 2012, at approximately 1:30 a.m., he observed a white Toyota Corolla driving westbound on the H-1 freeway.  The car was "weaving within its lane," then drifted over to another lane and then the right shoulder.  Chung pulled the car over. Paris was driving, and he had a female passenger.  Paris initially identified himself as "John J. Rivera," and Chung could not find any information on that name when he ran it through dispatch and his mobile data computer.  The female passenger told Chung Paris's real name, and Chung was then able to ascertain through dispatch that Paris was an escapee.  (The circuit court issued a cautionary instruction that Chung's statement that dispatch told him Paris was an "escapee" was

admitted to show the information Chung had available to him, not for the truth of the matter asserted.)

The State then rested.  The defense moved for a judgment of acquittal, arguing (1) that the State had not proven that Paris left his parents' home, his place of detention; and (2) that a failure to check in to LWFC is not "escape."  The circuit court denied the motion.  The defense did not put on a case in chief and, instead, rested.

**4.   Jury Instructions**

The following jury instruction on the offense of Escape in the Second Degree was given by agreement:

> The Defendant, Eugene Paris, Jr., is charged with the offense of Escape in the Second Degree.
> A person commits the offense of Escape in the Second Degree if he intentionally escapes from a correctional facility, a detention facility, or custody.
> There are two material elements of the offense of Escape in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
> These two elements are:
> 1.  That, on or about January 11, 2012 to and including February 2, 2012 in the City and County of Honolulu, State of Hawaii, the Defendant escaped from a correctional facility, a detention facility, or custody; and
> 2.  That the Defendant did so intentionally.

The following jury instruction providing the statutory definition of escape was given, as modified, over Paris's objection:  "'Custody' means restraint by a public servant pursuant to arrest, detention, or order of a court."

The following jury instruction on the terms "escape" and "custody" was given, as modified, over the objection of both the State and Paris:

> An escape can be perpetrated by a person even though he is not in actual physical custody or under immediate control and supervision of a guard.  A person may be deemed to be in custody when released from a correctional or detention facility on furlough and legally bound by restrictions.

Defense counsel objected to the initial form of the instruction on the basis that "it takes two sentences which are not only out of order but out of context [from Smith, 59 Haw. 456, 583 P.2d 337]."  The court modified the instruction so that the second sentence of the instruction read, "a person may be deemed to be in custody when released from a correctional or detention facility on furlough and legally bound by restrictions."  The State objected to the modification.  It is this instruction that Paris challenges on certiorari.

### 5.  The State's Closing Argument

During closing argument, the State told the jury the following:

> I want to point your attention to the elements instruction. . . .  Escape in the Second Degree, number 1, that on or about January 11, 2012, in the city and county of Honolulu, state of Hawaii, to and including February 2nd, 2012, the defendant escaped from a correctional facility, a detention facility, or from custody; and two, that the defendant did so intentionally.
> I want to point your attention to the word "or."  The State does not need to prove all three, that the defendant escaped from a correctional facility, detention facility, and from custody.  State is going to prove this by focusing on the defendant escaped from custody.  So we can cross out correctional facility, detention facility, and we're just going to look at the defendant escaped from custody.

15

(Emphasis added.)  Thus, the State confirmed that its entire theory of Paris's liability for Escape in the Second Degree rested on one prong of the offense:  escape from custody.

**6.  Verdict**

The jury found Paris guilty as charged.  The circuit court sentenced Paris to five years' incarceration, with credit for time served, with the sentence to run concurrently with any other term currently being served.  Paris appealed.

**D.  ICA Appeal**

The ICA affirmed the circuit court's judgment of conviction and sentence in a memorandum opinion, rejecting Paris's arguments that (1) the charge was deficient for failing to include the statutory definition of "custody"; (2) insufficient evidence supported his conviction; and (3) the jury instruction on "custody" drawn from Smith was erroneous.  State v. Paris, CAAP-14-0000427 (App. Jul 31, 2015) (mem.).  The ICA quoted Smith, 59 Haw. at 463-64, 583 P.2d at 343, for the proposition that a correctional facility maintains "control and custody [over a furloughee] in the sense that [the furloughee] was released on furlough not as a free person but as one legally bound by restrictions."  Paris, mem. op. at 6.  The ICA also cited State v. Kealoha, 71 Haw. 251, 253, 787 P.2d 690, 691 (1990), for the proposition that "a prisoner who failed to return at the expiration of her furlough, without a legitimate

excuse, was guilty of escape."  <u>Paris</u>, mem. op. at 7.  Paris now seeks review of the ICA's memorandum opinion.

### III. Standards of Review

**A.   Sufficiency of a Charge**

"Whether an indictment or complaint sets forth all the essential elements of a charged offense is a question of law, which [the appellate court reviews] under the <u>de novo</u>, or right/wrong, standard."  <u>State v. Young</u>, 107 Hawai'i 36, 39, 109 P.3d 677, 680 (2005) (internal quotation marks, citation, brackets, and ellipsis omitted).

**B.   Sufficiency of the Evidence**

"'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion."  <u>State v. Matavale</u>, 115 Hawai'i 149, 158, 166 P.3d 322, 331 (2007)(citation omitted).

**C.   Jury Instructions**

An appellate court reviews whether the jury instructions given by the trial court, "when read and considered as a whole . . . are prejudicially insufficient, erroneous, inconsistent, or misleading."  <u>State v. Locquiao</u>, 100 Hawai'i 195, 205, 58 P.3d 1242, 1252 (2002) (citation omitted).  "If there is . . . a reasonable possibility in a criminal case [that an erroneous

jury instruction contributed to conviction], then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." State v. Getz, 131 Hawaiʻi 19, 27, 313 P.3d 708, 716 (2013) (citations omitted).

## IV.  Discussion

### A.  Sufficiency of the Charge

On certiorari, Paris contends that the ICA "gravely erred in concluding that the charging language for Escape in the Second Degree was sufficient."  Paris first argues that the Felony Information did not provide fair notice to Paris of the offense he was charged with because the statutory definition of "custody" was not included.  His argument then focuses on the multiple definitions of "custody" used throughout the trial to show that he was not given fair notice in the Felony Information of precisely what type of custody he was alleged to have escaped from.  Paris argues that the circuit court denied his motion to dismiss the felony information on the basis that the term "custody" was unmistakable and readily comprehensible to a person of common understanding.  At the hearing on the motion, Paris points out, the circuit court introduced another definition of custody found in Smith:  that, while LWFC "did not have actual physical control over the [furloughee] at the time, he is alleged to have escaped and had control and custody in the

18

sense that the [furloughee] was released on furlough, not as a free person but one legally bound by restrictions." He then points out that, during opening statements, the circuit court acknowledged there was a distinction between the legal definition of custody and its general sense meaning of "confinement." This alone, to Paris, indicates that there were multiple meanings of custody at issue in the case, and Paris's Felony Information should have specified which definition of custody he was accused of escaping from.

Paris's argument is persuasive. Article I, Section 14 of the Hawaii Constitution states, "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . ." A charging instrument provides fair notice to the defendant if "it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet. . . ." State v. Wheeler, 121 Hawai'i 383, 391, 219 P.3d 1170, 1178 (2009) (citations omitted).

In Wheeler, this court held that an OVUII charge failed to provide fair notice to the defendant of the offense he was accused of committing. 121 Hawai'i at 395, 219 P.3d at 1182. The charge was deficient because, while it was drawn from the statutory language of the offense, it failed to include a definition of "operate," found in another statutory section,

19

that geographically limited the "operation" of a vehicle to "public way[s], street[s], road[s], or highway[s]."  121 Hawai'i at 393, 219 P.3d at 1180.  This court concluded that "the operation of a vehicle on a public way, street, road, or highway is an attendant circumstances of the offense of OVUII, and is therefore an element of the offense."  Id.  The failure of the charge to include this essential element rendered it deficient. Id.  Further, this court held that the charge failed to provide the defendant fair notice, because the term "operate" as used in HRS § 291E-61 was neither "unmistakable" nor "readily comprehensible to persons of common understanding."  121 Hawai'i at 393, 394, 219 P.3d at 1180, 1181.

In this case, the Felony Information alleged that Paris intentionally escaped from a "correctional or detention facility or from custody."  Relevant to this appeal, "custody" is defined as "restraint by a public servant pursuant to arrest, detention, or order of a court."  HRS § 710-1000.  This definition creates the additional attendant circumstances of (1) who is exercising restraint ("a public servant"); and (2) the bases for such restraint ("arrest, detention, or order of a court.")  In that sense, the common understanding of "custody" as "confinement" has been limited in a manner not unmistakable or readily comprehensible to a person of common understanding.  The Felony Indictment in this case did not allege any of the attendant

20

circumstances found in HRS § 710-1000's definition, and the omission of these essential elements resulted in a charge that did not provide fair notice of Paris of the offense he was alleged to have committed.  Therefore, the ICA erred in concluding that the Felony Information provided fair notice to Paris.

Were this the only error expressly alleged on appeal, we would vacate the ICA's judgment on appeal and the circuit court's judgment, and remand this case to the circuit court with instructions to dismiss the information without prejudice.  See Wheeler, 121 Hawai'i at 386, 219 P.3d at 1173.  In this case, however, Paris expressly challenges the sufficiency of the evidence supporting his conviction, as well as a jury instruction on "custody."  We find merit in both of these challenges, which are addressed in turn below, and reverse Paris's conviction for insufficiency of the evidence.

B.   **Sufficiency of the Evidence**

On certiorari, Paris contends that insufficient evidence supported his conviction for Escape in the Second Degree.  Paris argues, "No where [sic] in the law or in the documents provided to Petitioner is it ever suggested that if he misses a check-in appointment, it will be treated as if he escaped the prison facility."  We agree.  Under the particular facts of this case, we do not believe that non-compliance with the check-in

21

provisions of the furlough agreements is punishable as criminal escape in the second degree.  It appears in this case that the State relied upon the fact that Paris was a party to the furlough agreements to substitute for proof of "custody," and the fact that Paris did not comply with the check-in term to allow the jury to infer "escape."  The instant furlough agreements, however, contained unclear and contradictory provisions regarding Paris's custodial status.  Therefore, merely referencing the furlough agreement terms cannot satisfy the State's burden of proving an element of escape: custody.  Rather, HRS § 710-1021, the escape in the second degree statute, must be strictly construed.  See Smith, 59 Haw. at 461, 583 P.2d at 341 ("[W]e have consistently adhered in this jurisdiction to the rule of strict construction of penal statutes.") (citations omitted); see also HRS § 701-104 (2014) ("The provisions of [the Hawai'i Penal Code] cannot be extended by analogy so as to create crimes not provided for herein. . . .").

In this case, to have convicted Paris for escape in the second degree, the State was required to prove, beyond a reasonable doubt, that Paris "intentionally escape[d] from . . . custody," with "custody" statutorily defined as "restraint by a public servant pursuant to arrest, detention, or order of a

court."  HRS § 710-1021, -1000.[3]  It is undisputed in this case

that Paris's restraint was not pursuant to arrest.  There is

also no court order in evidence calling for Paris's restraint.

Therefore, at trial, the State had to prove that Paris escaped

from "restraint by a public servant pursuant to . . . detention.

. . ."  Indeed, at trial, Paris's case manager Noel Villanueva

agreed that Paris's mother's home was Paris's "place of

detention[.]"  The State's evidence at trial focused only upon

Paris's failure to check in with LWFC staff.  There was no

evidence presented that Paris intentionally escaped restraint by

a public servant from his mother's home.  In fact, no one

testified about any attempts to contact or locate Paris there.

---

[3]   The Dissent argues that substantial evidence supported Paris's
conviction for Escape in the Second Degree, because Villanueva testified that
Laumaka was the correctional facility from which Paris escaped.  Dissent at
5.  The conviction for Escape in the Second Degree was not based upon the
"correctional facility" prong of the offense, however.  See HRS 710-1021 ("A
person commits the offense of escape in the second degree if the person
intentionally escapes from a correctional or detention facility or from
custody.")  The State consistently maintained throughout trial that it
intended to prove that Paris escaped from "custody."  In fact, the State told
the jury during closing arguments to "cross out correctional facility [and]
detention facility" from its jury instructions and to "focus[] on the
defendant escap[ing] from custody."  The State clearly abandoned the two
other theories of criminal liability at trial.
    Further, the Dissent would remand this case for a new trial due to
instructional error.  Dissent at 1-2.  To the extent that the Dissent
suggests that the State could retry Paris on the resurrected theory that he
escaped from a correctional facility – a theory that was expressly abandoned
at trial – we note that "[t]he doctrine of judicial estoppel prevents parties
from playing fast and loose with the court or blowing hot and cold during the
course of litigation," the requirements of which were met in this case.
State v. Fields, 115 Hawaiʻi 503, 534, 168 P.3d 955, 986 (2007) (internal
quotation marks and citation omitted).

23

As such, insufficient evidence supported Paris's conviction, under HRS § 710-1021 and -1000.

We therefore disagree with the ICA's conclusion that substantial evidence supported Paris's conviction for escape. Paris, mem. op. at 6. The ICA relied upon Smith, 59 Haw. 456, 583 P.2d 337, and Kealoha, 71 Haw. 251, 787 P.2d 690, for the proposition that escape can be perpetrated by a furloughee who fails to return at the expiration of a furlough pass. Paris, mem. op. at 6, 7. Both cases are distinguishable from the instant case.

In Smith, the defendant, Kenneth Allan Smith, was a minor who had been committed to the Hawaii Youth Correctional Facility ("HYCF"). 59 Haw. at 457-58, 583 P.2d at 339-40. He was given a day pass that allowed him to remain off HYCF premises from 8:00 a.m. to 7:00 p.m. 59 Haw. at 458, 583 P.2d at 340. Smith failed to return to HYCF by 7:00 p.m. Id. Smith was charged with, and convicted of, escape in the second degree. 59 Haw. at 457, 583 P.2d at 339. He appealed, arguing that the trial court should have granted his motion for judgment of acquittal, because "he could not have escaped from the facility by merely failing to return thereto." 59 Haw. at 460, 583 P.2d at 341. In other words, Smith argued that he did not escape because he was on furlough and not in the "actual custody" or "immediate

supervision of a guard" at the time.  59 Haw. at 462, 583 P.2d at 342.

This court rejected Smith's argument, holding, "It is evident to us that intentional failure to return to <u>physical</u> confinement would fall within the definition of escape from custody."  <u>Id.</u> (emphasis added).  Thus, <u>Smith</u> stands for the proposition that "custody" extends to furlough from <u>physical</u> confinement.  <u>See</u> <u>also</u> <u>id.</u> ("[C]ontinued custody is not affected by the temporary release from <u>physical</u> control over an inmate.") (emphasis added).  In this case, LWFC did not have <u>physical</u> control over Paris.  Paris's failure to check in with LWFC staff before resuming his stay in the community is not the same as Smith's failure to return to <u>physical</u> confinement.  Therefore, <u>Smith</u> does not apply to this case.

Similarly, in <u>Kealoha</u>, the defendant, Lynette Lehua Kealoha, was on a furlough from the Women's Community Correctional Center ("WCCC") and failed to return at the expiration of the furlough.  71 Haw. at 251-52, 787 P.2d at 690.  She was convicted on escape in the second degree.  71 Haw. at 251, 787 P.2d at 690.  This court affirmed the conviction.  71 Haw. at 252, 787 P.2d at 691.  <u>Kealoha</u> thus also supports the proposition that an intentional failure to return to <u>physical</u> confinement at WCCC constitutes escape from custody.  Again, in this case, Paris was on an extended furlough in the community.

25

While he was required to check in to LWFC, he was not required to return to <u>physical</u> confinement at LWFC.  <u>Kealoha</u>, like <u>Smith</u>, is thus inapplicable to the instant case.

Paris's conduct falls within the escape in the second degree statute only by analogy to <u>Smith</u> and <u>Kealoha</u>, which HRS § 701-104 forbids.  ("The provisions of [the Hawaiʻi Penal Code] cannot be extended by analogy so as to create crimes not provided for herein. . . .");  <u>see</u> <u>also</u> HRS § 701-102(1) (2014) ("No behavior constitutes an offense unless it is a crime or violation under this Code or another statute of this State."); commentary on HRS § 701-102 ("There are no common-law offenses in Hawaii. . . .")  Were the legislature to have intended the failure to check in while on extended furlough to be a crime, it could have expressly included that within the statute defining the crime.

The insufficiency of the evidence supporting Paris's conviction requires reversal of the conviction.  <u>See</u>, <u>e.g.</u>, <u>State v. Abel</u>, 134 Hawaiʻi 333, 334, 341 P.3d 539, 540 (2014) ("As insufficient evidence was adduced at trial to prove [an] element of the offense, we reverse the Intermediate Court of Appeals' (ICA) Judgment on Appeal and the [trial court's] judgment of conviction.")  Although our analysis could end here, we address the circuit court's jury instruction next to provide the bench and bar with guidance on defining "custody" in second

degree escape cases predicated on a furloughee's failure to check in to LWFC.

## C.   Jury Instruction on "Custody"

On certiorari, Paris contends that the following jury instruction on custody invaded the province of the jury and directed the verdict:

> An escape can be perpetrated by a person even though he is not in actual physical custody or under immediate control and supervision of a guard.  A person may be deemed to be in custody when released from a correctional or detention facility on furlough and legally bound by restrictions.

He argues that the jury instruction informs the jury "that 'terms and conditions' may predicate an Escape in the Second Degree conviction, instead of the elements of the charge.  This directs the verdict and redefines the necessary attendant circumstances."  We agree.

This court reviews whether the jury instructions given by the trial court, "when read and considered as a whole . . . are prejudicially insufficient, erroneous, inconsistent, or misleading."  Locquiao, 100 Hawai'i at 205, 58 P.3d at 1252.  In this case, the jury instruction was erroneous, inconsistent, and misleading.  The jury instruction permitted the jury to "deem" Paris to have been "in custody" "when released from a correctional or detention facility on furlough and legally bound by restrictions."  The jury instruction is drawn from Smith, which we have already concluded is inapplicable to the facts of

27

this case.  The jury instruction also finds no basis in the statutory definition of "custody," which is "restraint by a public servant pursuant to arrest, detention, or order of a court."  HRS § 710-1000.  Therefore, this jury instruction was inconsistent with the court's other jury instruction setting forth the statutory definition of custody.  Id.  Further, the jury instruction equated release pursuant to a furlough agreement with custody.  In this case, however, the furlough agreement contained contradictory provisions regarding Paris's custodial status.  Therefore, this jury instruction was also erroneous and misleading.  Locquiao, 100 Hawai'i at 205, 58 P.3d at 1252.

A prejudicially erroneous jury instruction can require a remand to the circuit court for a new trial.  See, e.g., Getz, 131 Hawai'i at 21, 313 P.3d at 710; State v. Kalaola, 124 Hawai'i 43, 62, 237 P.3d 1109, 1128 (2010); State v. Mainaaupo, 117 Hawai'i 235, 252, 178 P.3d 1, 18 (2008).  We need not determine whether the erroneous jury instruction reasonably contributed to Paris's conviction, however, and no new trial is necessary here, because we reverse Paris's conviction and sentence due to insufficiency of the evidence.

## V. Conclusion

Due to the insufficiency of the evidence adduced at trial, we reverse the ICA's September 22, 2015 judgment on appeal and the circuit court's January 14, 2014 judgment of conviction and sentence.

| | |
|---|---|
| Marcus Landsberg IV<br>for petitioner | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| Brian R. Vincent<br>for respondent | /s/ Michael D. Wilson |